SIDNEY LOEB et al.

v.

FREDERICKA STERN, Admx.

*Opinion filed October 25, 1902.*

1. CONTRACTS—*when agreement to re-purchase is not an illegal option contract.* A contract executed contemporaneously with the sale of a note secured by mortgage, by which the sellers agree to take it back at par, with accrued interest, less one per cent commission, upon thirty days' notice in writing, is not an option contract inhibited by section 130 of the Criminal Code.

2. SAME—*further demand unnecessary after express refusal to perform.* If parties who have agreed to re-purchase a note and mortgage provided they are given thirty days' notice in writing expressly refuse to perform upon receiving such notice, a further demand after the expiration of the thirty days is not necessary.

3. SAME—*when foreclosure of a mortgage does not waive rights under contract of guarantee.* If the sellers of a note and mortgage refuse to perform their contract to take back the note and mortgage at par, with accrued interest, less commission, the purchaser may,

if the mortgagor is in default, proceed to foreclose the mortgage without waiving the right to damages for breach of the contract.

4. SAME—*when measure of damages may be ascertained by foreclosure and sale.* In order to ascertain the measure of damages for breach of contract to re-purchase a note secured by mortgage, the holder may foreclose the mortgage if the mortgagor is in default, and is not obliged to sell the note upon the market.

5. WITNESSES—*when parties are not competent to testify to transactions accompanying contract.* In an action by an administratrix upon a contract made with her testator, the defendants are not competent to testify to transactions accompanying the contract, which took place during the lifetime of such testator.

6. SAME—*what will not remove disqualification of the parties to testify.* The exception to section 2 of the Evidence act, which provides that when any agent of a deceased person shall testify in behalf of the personal representative of the deceased as to any conversations or transactions between such agent and the opposite party, then the latter may testify to the same conversations or transactions, does not authorize the opposite parties to cross-examine such agent as to transactions not covered by direct examination, and thus qualify themselves to testify to such transactions.

7. DAMAGES—*measure of value of property as security for note.* In the absence of any fraud or irregularity, the price at which the property was sold on foreclosure is the conclusive measure of its value as security for the note, in an action for a breach of a contract by the seller of the note to re-purchase the same at par.

*Loeb* v. *Stern,* 99 Ill. App. 637, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

This is an action of assumpsit, brought on January 6, 1898, in the circuit court of Cook county by the appellee, Fredericka Stern, administratrix with the will annexed of the estate of Marcus Stern, deceased, against the appellants, Sidney Loeb and August Gatzert, partners under the firm name of Loeb & Gatzert, upon the contract hereinafter mentioned. A general and special demurrer was filed to the original declaration and sustained. Thereupon, on April 28, 1898, appellee filed an amended declaration consisting of two counts, the sub-

stance of which is hereinafter stated. The appellants filed a plea of general issue, and, by leave of court, certain additional pleas. The additional pleas were demurred to, and the demurrers thereto were sustained, so that the case was tried upon the issue, made upon the amended declaration and the plea of the general issue thereto. At the close of appellee's evidence appellants moved the court in writing to exclude the plaintiff's evidence from the jury, and to instruct the jury to find the issues for the appellants, tendering an instruction in writing to that effect; but the court overruled the motion and refused to give the instruction, to both of which rulings defendants below excepted. Thereupon appellants introduced their evidence. Counsel for the defendants below submitted to the court and asked the court to give twelve instructions, but all of said instructions were refused by the court, and exception was taken to such refusal. No instructions were asked on behalf of plaintiff below. At the close of the evidence the court instructed the jury in writing as follows: "The court instructs the jury in this case to render a verdict in favor of the plaintiff, and to assess the damages in the sum of $1022.73," to which counsel for appellants excepted. Thereupon, the jury returned a verdict in accordance with the instruction of the court, and, after overruling motions for new trial and in arrest of judgment, the court rendered judgment upon the verdict. An appeal was taken to the Appellate Court where the judgment of the circuit court has been affirmed. The present appeal is prosecuted from such judgment of affirmance.

The facts are substantially as follows: On February 20, 1893, one G. D. Glaser, acting for Marcus Stern of Philadelphia, Pennsylvania, purchased from appellants as co-partners under the firm name of Loeb & Gatzert, a principal note and certain interest notes, and a trust deed, securing the same, upon real estate in Cook county, executed by F. D. and C. D. Hess. The principal note

was dated November 28, 1892, signed by Frederick D. and Caroline D. Hess of Chicago, and was for the sum of $6500.00 payable to their own order five years after date, with interest at six per cent payable semi-annually, and by them endorsed and made payable to the order of Marcus Stern. At the same time, ten interest notes of the same date, each for the sum of $195.00 were executed and endorsed in the same manner payable, respectively, on the 28th day of May and the 28th day of November in each of the years from 1893 to 1897, inclusive. The trust deed, securing these notes, was executed to the appellant, August Gatzert, as trustee.

At the time the notes and mortgage were so sold, and as a part of the consideration of the purchase, the following contract was executed by appellants and delivered to Stern, to-wit:

"CHICAGO, *Feb. 20, 1893.*

"*Mr. Marcus Stern, No. 943 N. Eighth St., Philadelphia, Pa.*

"DEAR SIR—We herewith hand you first mortgage of F. D. and C. D. Hess, dated November 28, 1892, for the amount of $6500.00, which, with accrued interest to date, amounts to $6588.69, for which we received check from Mr. G. D. Glaser, of this city, on your account. We hereby guarantee that the trust deed, securing the payment of principal and interest notes, which we hand you herewith, is a first lien upon the property covered in said deed, and that the title to said property is good in said F. D. and C. D. Hess, and agree to protect you from any loss, which might arise from any defect in said title. We also guarantee you the completion, free from all mechanics' liens, of the four-story stone-front store and flat building, which is now in process of completion upon said premises, and which is known as No. 6504 State street. We will also see to it that the taxes are paid on said property during the term of loan, and that the building will remain insured for an amount of no less than $6500.00 during said time, which insurance policies we will hold as collateral security of the loan for your benefit. We also hold abstract of title and agree, furthermore, to take this mortgage back at par and accrued interest, less one per cent commission, provided you give us thirty days' notice to such effect in writing.                "Very respectfully yours,

                                LOEB & GATZERT."

More than three years later, on August 10, 1896, a default then existing in the payment of the interest which fell due on May 28, 1896, Marcus Stern caused to be served upon appellants the following notice, to-wit:

"ATLANTIC CITY, N. J., *8/7/96.*
*"Mess. Loeb &. Gatzert, Chicago, Ill.*

"GENTLEMEN—In accordance with the provision in that respect, contained in your writing of February 20, 1893, wherein you agree to take back the note of $6500.00 and trust deed of Frederick D. and Caroline D. Hess, at par and accrued interest, less one per cent commission, I do hereby give notice that I desire to avail myself of the benefits of said provision, and do hereby notify you to take back said note and trust deed in accordance with the terms of said provision, thirty days after receipt of this notice by you, and I hereby authorize G. D. Glaser to receive the amount of said note and interest less commission, for me.           "Truly yours,

MARCUS STERN."

Appellant Gatzert testified that the following conversation took place at the time of the service of said notice by Glaser: "I told him that we would not buy it back, because at the time he bought this mortgage I told him I would make this agreement simply because his father-in-law was coming to the World's Fair in 1893, and he wanted to look at the property then, and if it didn't suit him I would then take the mortgage back—we would take the mortgage back. For that reason there was an understanding in the nature of our agreement, and I told him we were not compelled to take back that mortgage. Mr. Glaser said, 'Well, I simply serve you with this notice.' That is all he said. He said, 'I have nothing to say, I serve you with this notice." Appellant Loeb testified as follows: "I remember the conversation with Glaser which Mr. Gatzert had that time. He came in and presented that letter from Mr. Stern, and said that he wanted his money. I was present and we were very much surprised to see him come in after owning the mortgage for three years. We told him that that wasn't the intent of that

letter; that he told us at the time he bought the mortgage that he would not ask it of us, but that he was buying it for his father-in-law (Stern); that his father-in-law would be here during the World's Fair, and he would take him out and show him the property, and we agreed to take it back, if his father-in-law did not like it at the time. Instead of that he keeps the mortgage for three years. We told him that we would not buy it back. He said that he would see about it, and went out of the office. He wanted his money. That is all he said."

After the service of this notice and the conversations above detailed, Glaser took the notes and trust deed to Mr. Strauss, an attorney, with instructions to proceed to foreclose it.

No demand was made upon Loeb & Gatzert on or after the expiration of the thirty days provided in the above notice. Subsequently, on September 23, 1896, Marcus Stern died, and appellee was appointed administratrix with the will annexed of his estate.

On or about January 22, 1897, appellee, as such administratrix, filed a bill to foreclose the trust deed in question, the makers thereof being in default in the payment of interest. No notice was given to appellants of the filing of this bill; but appellant, Gatzert, who was the trustee in the trust deed, was made a party defendant to the foreclosure proceeding. Appellant Loeb of the firm of Loeb & Gatzert was not made a party defendant.

Appellant, Gatzert, appeared and filed his answer in the foreclosure suit on March 9, 1897, and afterwards a decree of sale was entered. The property was bid in on behalf of appellee, and on June 30, 1897, a deficiency decree was entered against the mortgagors, and in favor of appellee, for $1089.67. Execution was duly issued on July 13, 1897, and was given to the sheriff to execute on the same day. On October 11, 1897, the sheriff returned the writ "no property found," having made demand upon both execution debtors, left with them a copy of the writ,

and notified them to file a schedule. The sheriff returned "no schedule filed." No part of the deficiency decree has been collected. Appellee commenced the present suit against the appellants upon the contract already set out to recover the amount of the deficiency decree less one per cent of the amount of the notes aforesaid. Appellants defended upon the following grounds: (1) That no time being mentioned in the original agreement wherein the security might be returned, such security should have been returned within a reasonable time, and that three years after the making of the contract was not a reasonable time; (2) that no demand upon the appellants or tender of the securities was ever made on or after the expiration of the thirty days provided in the letter of August 7, 1896; (3) that the appellee waived her demand against the appellants and elected to retain the securities and foreclose same in the ordinary way; (4) that, if the appellee sought to hold the appellants to the terms of the letter of February 20, 1893, and demand and tender were properly made, yet the appellee pursued no remedy known to the law as against said appellants in her subsequent dealings with the securities; (5) that the letter of February 20, 1893, constituted a contract contrary to the provisions of the Anti-option Statute, and was therefore void.

Upon the trial the court refused to permit the appellants' witnesses to testify as to the conversations had at the time of the writing of the letter dated February 20, 1893, between Mr. Gatzert and Mr. Glaser, which testimony was offered for the purpose of showing what the parties at the time considered a reasonable time within which to exercise the option given to Marcus Stern in which to return the securities.

LOEB & ADLER, for appellants.

PENCE & CARPENTER, for appellee.

Per CURIAM: In deciding this case the Appellate Court delivered the following opinion:

"It is contended by the learned counsel for appellants that the agreement by which appellants undertook to buy back the mortgage notes in question at the election of Marcus Stern, is an option contract within the prohibition of section 130 of the Criminal Code. This contention cannot, we think, be sustained. The contract to buy back was contemporaneous with the purchase by Stern and part of the same transaction. The decision of the Supreme Court in *Walf* v. *National Bank,* 178 Ill. 85, is in point and controlling. (See also *Ubben* v. *Binnian,* 182 Ill. 508).

"It is contended that because no demand was made upon appellants to carry out the terms of the contract to re-purchase after the expiration of the thirty days named in the notes, therefore no recovery could be had. We regard this contention as untenable. Upon receiving the notice of Stern's election to have appellants perform their undertaking to re-purchase appellants expressly notified Stern's agent that they would not perform. This dispensed with need of any further demand. The law does not require the needless formality of demand in such case, it being apparent from the declaration of the parties that a demand would be unavailing. (*Wight* v. *Gardner,* 66 Ill. 94; *Lyman* v. *Gedney,* 114 id. 388; *Gorham* v. *Farson,* 119 id. 425).

"It is also contended that the rights of Stern under the contract were waived when his representative proceeded to a foreclosure of the trust deed by which the notes in question were secured.

"We are of opinion that the action of appellee in foreclosing the trust deed did not operate to estop her from claiming damages for breach of the contract to re-purchase the notes. Assuming that contract to have been a valid and enforceable contract, and that appellants,

upon their refusal to perform, became liable to appellee for breach of it, how was appellee to establish her measure of damages? If, upon the refusal of appellants to re-purchase, she had at once brought suit for breach of the contract, her claim to any substantial damages would doubtless have been met by the answer of appellants that, until she had enforced payment of the notes or disposed of them by sale, it could not be known that she was damnified in any substantial manner, and hence that she could recover nominal damages only. It was the duty of appellee to take such action, as might be reasonably calculated to reduce the damages resulting from appellants' breach of the contract. Appellants refused to take back the notes. If they were to be enforced at all by foreclosure of the trust deed, it was for appellee to take this means of realizing upon them. In so doing she was, presumably, getting all out of the notes which could be realized by subjecting the land security to their payment, and to that extent she was by prompt action presumably decreasing the damages for which appellants were liable. We are unable to perceive any substantial difference between such action and the ordinary sale upon the market of goods which a contracting party should, but will not, receive in compliance with his contract to buy. In either case, it is simply the effort of the party damaged by breach of the contract to make the damages as slight as possible.

"We think that there is no merit in the contention of counsel, that appellee should have sold the notes upon the market in order to establish the measure of her damages. The ground, upon which a vendor is required to sell upon the market the goods which the vendee refuses to receive in conformity with his contract, before seeking substantial damages from such vendee for breach of the contract to buy, is the duty of the vendor to realize all that he reasonably can upon the goods and thus lessen,

in so far as he reasonably can, the damages resulting from the breach of the contract. This duty would be as well met by the reasonable efforts of appellee to realize all that she could upon the notes by foreclosure, as by sale of the notes, unless it appeared that by the latter method a greater reduction of the damages could be accomplished. The underlying reason and purpose of the rule is the reduction of the loss. In Sutherland on Damages, page 155, the author says:

"'Where damages can thus be saved by timely preventive measures, taken by the injured party, it is his duty to exert himself for that purpose, but he has a correlative right, in similar cases, to employ other means to attain the object of the contract broken, which was within the contemplation of the parties at the time of contracting; or to extricate himself from any predicament in which the wrong complained of may have placed him.'

"It does not appear from the evidence that, at the time of the breach of the contract, the notes could have been sold upon the market, or that by sale of them, or in any other manner, appellee could have further reduced the damages caused by the breach of appellants' contract. At the time of the appellants' refusal to re-purchase, one of the interest notes was overdue and unpaid. It would seem very doubtful if such paper could have been sold upon the market, except at a sacrifice, and that it could have been sold at all is problematical. There is no evidence to warrant a conclusion that it could.

"Counsel also contend that parol evidence should have been admitted to show that the time within which the election of appellee to re-sell the notes to appellants should be exercised, was limited, and that the right had expired by such limitation before appellee sought to enforce it. In this behalf it was sought to show that by oral agreement the time was in effect limited to the time of a proposed visit of Marcus Stern to the city of Chicago, he being a non-resident of that city. The written

contract contains no limitation of time within which the option was to be acted upon. It is also urged that the time for the exercise of the option would be, in the absence of express provision in the written agreement, a reasonable time, and that to establish what was a reasonable time it was competent to show what the parties themselves regarded as a reasonable time by showing their conversations in relation thereto at the time of the making of the written agreement.

"It is enough to say of these contentions that, if it was proper to allow any showing in this behalf to be made, yet no competent evidence was presented by appellants by which any such facts could be established.

"The mere statements by appellants to Glaser as to what they told Glaser at the time of the service of the notice upon appellants, being after the written agreement was made, could not establish these facts. Nor were appellants competent witnesses by whom to prove what was said by them and by Glaser at the time of the making of the original contract in writing. This suit was brought by appellee as administratrix with the will annexed of Marcus Stern, now deceased. Therefore, appellants were not competent to testify to the transactions accompanying the contract made in Stern's lifetime. The fact, that Glaser testified at the trial did not make appellants competent witnesses, except as to matters concerning which Glaser testified in behalf of appellee. Glaser, as a witness on behalf of appellee, did not testify at all to any of the transactions which occurred when the contract was made. Appellants could not by questioning Glaser upon cross-examination as to such transactions, thus make themselves competent as witnesses to the transactions, for he was, in thus testifying upon his cross-examination, not a witness on 'behalf' of appellee. Upon his direct examination as a witness on behalf of appellee, he did not testify at all as to such matters. The statute which makes parties in interest as

litigants competent to testify, removing the disability imposed by the common law, makes certain exceptions. The statute is, in part, as follows: Section 2 of chapter 51 of the Revised Statutes, provides in general that no party to a civil suit shall be allowed to testify on his own behalf when any adverse party sues or defends as administrator, etc. Under this provision several exceptions are specified. By paragraph 2 it is in effect provided that when in such action, etc., any agent of any deceased person shall, in behalf of any person suing or being sued as administrator, etc., testify to any conversation or transaction between such agent and the opposite party, etc., then such opposite party may testify concerning the same conversation or transaction. This latter provision is an exception to section 2 of the act. Section 2 is an exception to the operation of section 1 of the act and section 1 is a modification of the common law rule as to disability of parties in interest. The question now presented is as to whether the testimony of appellants proffered as to conversations with Glaser, agent of Marcus Stern, had when the written contract was made, falls within the last exception noted, and is therefore competent. We think that it does not, and that it was properly excluded by the learned trial court. When Glaser testified 'on behalf' of appellee to transactions with appellants, it became competent for appellants to testify in relation to the same, but this did not open the door for testimony of appellants regarding other matters not testified to by Glaser. Nor did the questioning of Glaser upon cross-examination as to such other transactions, not touched upon in his testimony upon direct examination, make the testimony of appellants competent as to the same. For to that extent he was not a witness 'in behalf' of the appellee, within the provision of the statute. (*Donlevy* v. *Montgomery*, 66 Ill. 227).

The facts being established without any conflict, it was for the court to determine whether the right of Stern

was exercised within a reasonable time. (*Chicago, Rock Island and Pacific Railroad Co.* v. *Boyce,* 73 Ill. 510).

"We are of the opinion that the court did not err in holding that in this case Stern had the right to enforce the contract when he gave the notice of August 10, 1896.

"Evidence was proffered and excluded by the court as to the value of the mortgaged premises which were sold upon foreclosure of the mortgage lien in question. We are of opinion that in this there was no error. In the absence of any fraud or irregularity in the foreclosure proceeding, the price at which the property was sold is the conclusive measure of its value as a security of the notes in question and for the purposes of this suit. (*Franklin* v. *Greene,* 2 Allen, 519).

"It can hardly be maintained that appellants had no notice of the foreclosure proceeding, for one of them was a party to the suit and appellants were co-partners.

"The questions of appellants' rights under the deficiency decree in the event of payment by them of this judgment, is not, upon this record, a matter for consideration. To say that they would be equitably entitled to the rights of appellee under the deficiency decree, would be no answer to appellee's claim to this judgment.

"We are of the opinion that a clear right to the recovery was established, that no valid defense was shown, that substantial justice has been done, and that there is no reversible error in the proceedings of the trial court. Therefore the judgment is affirmed."

We concur in the views expressed in the foregoing opinion, and in the conclusion there announced. Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*