Charles L. Baxter, Individually, Appellant, and Charles L. Baxter, Administrator De Bonis Non Cum Testamento Annexo of the Estate of Harry H. Montgomery, Deceased, Appellee, v. Continental Illinois National Bank and Trust Company of Chicago, Appellee.

Gen. No. 40,132.

Heard in the second division of this court for the first district at the June term, 1938.

Opinion filed February 23, 1940.

JAMES K. McVEY, of Chicago, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellee Continental Ill. Nat. Bank & Trust Co.; FREDERIC BURNHAM, DAVID F. ROSENTHAL and JACOB X. SCHWARTZ, all of Chicago, of counsel.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

In a trial without a jury judgment was entered by the court wherein, after finding the issues for plain-

tiff on his amended statement of claim and finding the issues for defendant, Continental Illinois National Bank & Trust Company, on its counterclaim, it was further found that "the claim of each of said parties against the other is the same in amount" and adjudged that plaintiff recover nothing from defendant. Plaintiff, Charles L. Baxter, appeals from that portion of the judgment entered in favor of defendant on its counterclaim. Defendant filed notice of cross appeal from that portion of the judgment order which reads: "The court . . . finds the issues for the plaintiff . . . on his amended statement of claim," specifying that its cross appeal is to be considered only in the event that "a reversal of the judgment for defendant . . . is necessary." Although plaintiff brought this action both as the administrator *de bonis non* with the will annexed of the estate of Harry H. Montgomery, deceased, and individually, as a creditor of said estate, this appeal has been taken as expressly stated by Baxter in his notice of appeal in his individual capacity only and not as such administrator.

In his amended statement of claim for money had and received plaintiff alleged substantially that in his individual capacity he filed a sixth-class claim against the aforesaid estate of Harry H. Montgomery in the amount of $5,124.27, which was allowed but no part of same has been paid; that defendant (sometimes hereinafter for convenience referred to as the bank), which had also filed a sixth-class claim against the estate in the amount of $41,807.50, and the remaining sixth-class claimants who had filed claims aggregating $1,100.33 were paid in full; and that as a result of these payments and a subsequent deficiency in the assets of the estate the bank received $4,460.86 in excess of its proportionate share of the money disbursed by the estate in the payment of sixth-class claims and that plaintiff is entitled to recover this amount from defendant.

The bank filed an affidavit of defense and a counter-claim averring that at the time of the death of Montgomery, he was indebted to it upon his promissory note for $41,807.50; that the note by its terms matured October 15, 1931; that Baxter had guaranteed the payment of the note, which was in the face amount of $42,000; that the note was secured by certain collateral, some of which belonged to Montgomery and some to Baxter; that at the time the note was paid by the executrix of Montgomery's estate on September 12, 1931, all of the collateral, which had an aggregate value of $38,687.50, was delivered to her; that the collateral owned by plaintiff was at that time worth $15,650; that upon the delivery of the collateral to the executrix, she delivered to Baxter his portion of same; that defendant had changed its position by delivering up said collateral; that same had depreciated in the hands of the executrix and it would be inequitable to permit the disaffirmance of the transaction and recovery from defendant; that the bank had not been overpaid; that if any part of the payment by the executrix was not valid, then the note had not been paid in full and Baxter, on account of his guaranty of the note, was indebted to defendant to the extent of any recovery to which he might be entitled as plaintiff; and that defendant is not indebted in any amount to plaintiff.

In its judgment order the trial court held in effect that the bank had been paid a larger pro rata payment of its claim than it should have received, but that such overpayment being invalid its note to that extent had never been paid and that, therefore, Baxter, for whose sole benefit this action was brought was liable on his guaranty to the extent that the bank had been overpaid.

For a proper understanding of the issues it is necessary to set forth the facts somewhat fully. June 15, 1931, Harry H. Montgomery executed and delivered to defendant, then known as "Continental Illinois Bank

& Trust Company'' his collateral note as of said date in the principal sum of $42,000, payable to the order of the bank on October 15, 1931. The payment of the note was guarantied by plaintiff by his indorsement to that effect appearing on the reverse side thereof. As collateral for the note there were delivered to the bank the following securities: 550 shares E. L. Bruce Company common stock; 300 shares Middle West Utilities Company common stock; 100 shares The North American Company, issued in the name of and indorsed by Charles L. Baxter; 200 shares Union Carbide & Carbon Corporation, issued in the name of and indorsed by Charles L. Baxter. The shares of stock indorsed by Baxter belonged to him and had been deposited with his consent by Montgomery as collateral to the note.

Montgomery died July 3, 1931, and August 20, 1931, letters were issued to his wife, Edith Virginia Montgomery, as executrix. Montgomery carried policies of life insurance in the face amount of $45,000, payable to his estate, which, together with the interest thereon, amounted when collected to $45,498.83. Shortly after Montgomery's death Baxter, who had been associated with him in various businesses, had a meeting with Mrs. Montgomery and Dr. George N. Beecher, a physician and close friend of the Montgomery family. At that meeting, according to the testimony of Dr. Beecher, those present including plaintiff, agreed that the proper thing to do was to pay off the note with the insurance money in order to stop the running of interest and release the collateral which the bank was holding. Baxter admitted that he was anxious to get his collateral back. As a result of said meeting the executrix called at the bank on September 12, 1931, and paid defendant out of the insurance money heretofore referred to $41,807.50, the discounted amount due on the note, which by its terms did not mature until October 15, 1931. The bank thereupon surrendered to

her the note and all the collateral, which was then of the value of $38,687.50, and on the same date the executrix delivered to plaintiff the securities which belonged to him and which the bank had been holding as part of the collateral to the note. The collateral so returned by the executrix to Baxter was then of the agreed value of $15,650.

Thereafter, September 24, 1931, the bank filed its sixth-class claim against the estate of Harry H. Montgomery and same was allowed December 8, 1932, for $41,807.50, the amount which had been paid to it September 12, 1931. An inventory filed by the executrix and approved November 12, 1931, showed as assets of the estate the collateral returned to her by the bank upon the payment of decedent's note consisting of 300 shares of Middle West stock and 550 shares of Bruce common stock remaining in the hands of said executrix after she had given Baxter the collateral belonging to him. In addition the inventory showed the $45,000 principal amount of life insurance collected after Montgomery's death. Subsequently an amendment and supplement to the inventory was filed and approved, showing that there were in the estate 75 shares of miscellaneous stock in addition to the foregoing assets.

June 30, 1932, plaintiff. filed a sixth-class claim against the estate for $5,124.27, which was allowed January 24, 1933, but was not paid because there were no assets with which to pay it. June 10, 1933, the executrix filed her final report and account, showing that she had paid sixth-class claims against the estate in the total amount of $42,907.83, which was in full of all the sixth-class claims filed and allowed with the exception of the claim of Baxter. Plaintiff is the only claimant against the Montgomery estate whose claim was not paid and is the only person having any interest in any recovery that might be allowed in this case.

Plaintiff filed verified objections in the probate court October 17, 1933, to the final account of the executrix,

in which he urged that the account filed by her be not approved for the reason, among others, that she had been grossly negligent in and about her duties. He alleged in his objections that December 1, 1931, the court had entered an order permitting the sale and transfer by the executrix of 200 shares of Middle West Utilities Company stock and 450 shares of E. L. Bruce Company stock, but that she had negligently failed to dispose of same and that if said stock had been disposed of the estate would have been solvent. Thereafter, January 31, 1936, Baxter was appointed administrator *de bonis non* with the will annexed of Montgomery's estate, under which appointment he qualified on February 17, 1936. The present action, in which plaintiff is claiming the right to recover against defendant in his individual capacity as a creditor of the Montgomery estate, was filed July 30, 1936, about five years after letters of administration had issued to Mrs. Montgomery.

In support of his contention that he, as a creditor of the Montgomery estate, whose sixth-class claim was allowed but not paid because of the insolvency of said estate, is entitled to recover from defendant the alleged overpayment made to it by the executrix on its sixth-class claim and to sustain that portion of the judgment in his favor against defendant, plaintiff cites *Wolf v. Beaird,* 123 Ill. 585. There Edward J. French died testate and John Wolf was appointed executor of his estate. John B. Gharst filed two claims against the estate, which were allowed and paid in full by the executor. Both Wolf and Gharst believed at the time of such payment that the estate was solvent. Two large claims of the same class as the Gharst claims were subsequently filed against the estate and the allowance of same permitted payment only to the extent of 61.72 per cent of the claims of the class involved. It was asserted that Gharst, having been paid in full out of the assets of the estate, received 38.28 per cent

more than he should have had. Gharst having died, Wolf filed a claim against his estate "for the excess of the amount so paid to Gharst over the pro rata share to which he was properly entitled." In that case the court said at pp. 590, 591 and 592:

"Both Wolf and Gharst knew or were bound to know, that, under the law, Gharst could not lawfully receive his claim in full out of the assets of the French estate, unless those assets were sufficient to pay all claims of the same class with his own. There was a mutual mistake of facts in respect to which both parties were equally bound to inquire. They both believed that the assets were sufficient to pay the claims in full and acted upon such belief, but both were mistaken in regard to the fact. 'Money paid by one party to another through a mutual mistake of facts, in respect to which both were equally bound to inquire, may be recovered back.' *Canal Bank v. Bank of Albany,* 1 Hill, 287; *Wheadon v. Olds,* 20 Wend. 174.

" . . .

"The filing of the claim by Wolf against Gharst's estate was in the nature of an equitable action for money had and received, or money paid under a mistake of fact. . . .

"As Gharst had received more money than he ought to have had, his estate was liable to refund the amount."

The theory of plaintiff's defense against defendant's counterclaim as stated in his brief is that his motion to strike the counterclaim should have been allowed since the fact alleged therein "that the defendant on September 12, 1931, accepted $41,807.50 in full of said promissory note and surrendered up said note and all the collateral," constituted " a release of the said Charles L. Baxter as accommodation guarantor."

We are in accord with the rule enunciated in the *Wolf* case, *supra,* as applicable to the factual situation presented there. As the court said in that case the

money was paid under a mistake of facts and "Gharst had received more money than he ought to have had." Here, however, because of the additional factors and principles involved and a factual situation entirely dissimilar, the *Wolf* case cannot be held to be controlling. When the note in the instant case was paid by the executrix to the bank there was no mistake of fact as to the solvency of the Montgomery estate. The estate was in fact solvent and its assets were sufficient to pay all the claims filed and allowed, including plaintiff's. It became insolvent solely by reason of the negligence of the executrix in failing to liquidate the securities belonging to it. In the *Wolf* case the Gharst claims were not secured as was the bank's note in this case. Neither was there any question of guaranty in that case.

If it be assumed that the bank received from the estate a larger portion of its claim than the assets of the estate warranted and further assumed that to that extent the payment to it was for any reason invalid, just what is plaintiff's position as guarantor of the Montgomery note? In our opinion his liability as such guarantor was to the same extent never satisfied. It is only to quibble for plaintiff to say that he does not claim that the payment of the note by the executrix was void or invalid but only that the bank should be compelled to return to him the amount that it was overpaid. Surely if the bank were forced to return any part of the amount received by it in payment of the note because of the insolvency of the estate, or for any other reason, the payment certainly to that extent was neither valid nor binding. We think that it would be highly inequitable to compel the bank to refund any part of the amount paid on the note without reviving plaintiff's guaranty.

While ordinarily payment made by a debtor of a guaranteed obligation will discharge a guarantor or surety, payment to have this effect must be valid and

binding and if the creditor is for any reason forced to refund the payment the liability of the guarantor or surety is restored. In Stearns Law of Suretyship (4th ed.), the author, after stating the general rule that payment discharges the surety or guarantor, says at pp. 140, 141:

"While this proposition is self-evident, yet it must be observed, that in contemplation of the law, nothing amounts to payment or satisfaction which has no value, and if that which is taken in payment is not what it purports to be, or the use or retention of it by the party receiving is prohibited by law, or for any reason becomes a nullity, then the so-called payment or substitution is not a satisfaction of the original contract, and in the absence of actual or constructive waiver of these infirmities in the medium of payment, the original contract, although surrendered, will be revived, and the liability of the surety or guarantor restored.

". . .

"If the principal pays the debt contrary to the provisions of the insolvency laws, so that the creditor is required to surrender the amount paid as an unlawful preference, the surety may be held, although the evidences of the indebtedness have been given up, at the time of payment.

". . .

"Also where an obligation taken in renewal is void, . . . by reason of coverture or infancy or any other disability of the party executing it, the creditor will be restored to all his rights under the original contract, and the same rule applies where a new contract is void because executed without authority." Other authorities to the effect that in order to discharge a guarantor by payment, the payment must be valid and that the guarantor will not be released if the payment is not legal and binding are: (28 C. J. 1004; 21 R. C. L. 1047; 1 Brandt on Suretyship and Guaranty, 3rd ed. p. 705; IV Williston on Contracts (1933 ed.) section

1219; *Irving Trust Co. v. Bank of Manhattan Trust Co.,* 8 F. Supp. 686; *Watson v. Poague,* 42 Iowa 582; *Pigg v. Madison Nat. Bank,* 13 Ky. Law Rep. 203 (Abst.); *Smith v. Powers,* 255 Fed. 582; *Swarts v. Fourth Nat. Bank,* 117 Fed. 1).

It thus clearly appears that if any liability did attach to defendant by reason of the alleged overpayment of its claim plaintiff is precluded from recovery by reason of the revival of his guaranty on the note to the extent that defendant might be liable to him because of such overpayment, and that the bank was bound to accept the payment of the note in full when proffered in order to hold plaintiff as guarantor in the event of such a contingency as has arisen here.

In *Smith v. Powers, supra,* concerning one De Lee, who gave the guaranty in that case and who it was claimed was released therefrom by the payment of the notes involved, the court said at pp. 595 and 596: "However, I do not think this fact necessarily changes the legal aspect of the case, as the payments to Mr. Powers were not valid payments, and no act necessary to bind De Lee on his guaranty was omitted, and he remains bound thereby. His knowledge and participation, however, has much to do with the equities of the case. I think his participation in the transaction and knowledge of the facts prevent his claiming that the guaranty became inoperative. When Mr. Powers refunds to the estate in bankruptcy the sums received by him, he can recover of Patrick E. De Lee, the guarantor, whose rights have in no way been impaired. Mr. Powers will have no difficulty in establishing the guaranty, as Mr. De Lee testified he gave it, and that it was only surrendered because of the payments made by the construction company to Mr. Powers."

There is evidence in the record here that plaintiff not only acquiesced in and consented to the payment of the note but that he advised the executrix to pay

it as and when she did. He was a party to the original transaction as a guarantor of Montgomery's note and as owner of part of the collateral put up at the bank to secure the note's payment. He was a direct beneficiary of the transaction involving payment of the note since by it he had returned to him his collateral of the value of $15,650, and, according to his contention, was released on his guaranty. Baxter, having advised and having assisted in inducing the executrix to pay the note and having reaped the benefit of his conduct, is estopped from now asserting that the bank should not have been paid in full.

If the executrix had sought to recover all or part of the money she paid the bank on the note, there can be no question but that she would have had to restore the *status quo* by returning to the bank the securities it had parted with, and it is just as clear that plaintiff is in no position to recover a portion of the amount paid on the note or to ask, in legal effect, to have the transaction involving payment of the note set aside in part without restoring the *status quo* to the bank of at least the benefits which he personally received. In *Scott v. Morris,* 131 Ill. App. 605, where a lawyer had received full payment of his claim from a decedent's estate upon giving up securities upon which he had a lien for his claim and thereafter the administratrix of the estate discovering that the estate was insolvent sought recovery of a portion of the payment so made, the court in holding that there was no liability on the part of the lawyer said at p. 608: ''Morris would have had a right to proceed and sell the security to pay his claim if appellant had failed to make redemption by paying it. *Levy v. Chicago National Bank,* 158 Ill. 88.

''Morris waived no right and lost no remedy by having his claim allowed by the Probate Court as a claim of the seventh class. *Furness v. Union National Bank,* 147 Ill. 570.

"The uncontroverted proof is that appellant paid Morris' claim voluntarily, of her own free will, without protest or demur, took his receipt therefor and a surrender of his security. She is now estopped from assuming any position contrary to that indicated by her actions. In no event could she disclaim her actions on any theory, however equitable, without first restoring the *statu quo* by redelivering to Morris the securities with which he parted on payment of his claim, or offering to do so. No offer of this character has been made."

Upon the death of Montgomery the bank, as a secured creditor, had the right to prove and have allowed against his estate the full amount of its claim for $41,807.50, and to collect dividends thereon from such assets as were in the estate until it realized from such dividends and the liquidation of its collateral the full amount of its claim. In *Furness v. Union Nat. Bank of Chicago,* 147 Ill. 570, where a secured creditor filed a claim against an estate for the full amount of the note without deducting anything for the value of the securities which had been pledged with him by the debtor as collateral thereto, the court said at pp. 573 and 574: "A creditor, secured by collaterals, is permitted to prove his claim for the full amount, because he has the double right of suing the debtor personally on the debt itself, and also of realizing from the property pledged as security. He may sue on the principal debt before resorting to the security. . . . These rights remain the same if 'the debtor dies and dies insolvent.' (*Mason v. Bogg,* 2 Mylne & Craig's Ch. Rep. 443; *Ex parte Alliance Bank,* L. R. 3 Ch. App. 769 and 771). . . . But the amount of the dividend upon the full amount proven, when added to the amount realized from the collateral, must not exceed the amount of the debt proven."

As heretofore stated, the bank also not only had the right to accept payment of the note when it did but it

was bound to do so to hold the guarantor under circumstances such as have arisen here. As was said in the case of *Swarts v. Fourth Nat. Bank, supra,* ''a refusal to accept them [payments on notes] might well have been held to be an act so likely to entail unnecessary loss upon the accommodation makers that it would discharge them.'' In any event as a secured creditor the bank was not overpaid and neither the estate nor plaintiff was subjected to any loss by reason of the payment of the note by the executrix. As already stated and as charged by plaintiff in his objections filed to the final account and report of the executrix in the probate court, the estate became insolvent and his claim was not paid because of the negligence of the executrix in failing to liquidate the estate's securities when she was authorized to do so.

Plaintiff's endeavor to justify a recovery in this case presents a most unusual situation. On the one hand, as a creditor of the Montgomery estate he insists in effect in having the payment of the note to the bank set aside in part, and on the other hand he insists, as a guarantor, that the note was fully paid. These two wholly inconsistent positions, which plaintiff is forced to assume, are alone sufficient to preclude recovery by him.

In this action for money had and received we are impelled to hold that plaintiff failed to establish the essential fact that defendant has in its possession money which it should not in equity and good conscience retain as against plaintiff.

While the judgment in the form entered by the trial court properly denied recovery to plaintiff, in our opinion that portion of the judgment which found the issues for plaintiff on his amended statement of claim was erroneously entered. Defendant sought relief on its counterclaim only in the event that plaintiff prevailed on his statement of claim.

For the reasons stated herein the judgment of the municipal court will be reversed in its entirety and judgment entered here in favor of defendant and against plaintiff on the latter's statement of claim and in favor of plaintiff and against defendant on the latter's counterclaim.

*Judgment reversed and judgment here in favor of defendant and against plaintiff on statement of claim.*

*Judgment here in favor of plaintiff and against defendant on counterclaim.*

FRIEND and SCANLAN, JJ., concur.