DU QUOIN STATE BANK, Plaintiff-Appellee, *v.* WILLIAM R. DAULBY *et al.*, Defendants-Appellants.

Fifth District   No. 82—138

Opinion filed April 26, 1983.

Darrell Dunham and John Womick, both of Carbondale, for appellants.

Jerry B. Smith, of Hohlt, House, DeMoss & Johnson, of Du Quoin, for appellee.

JUSTICE WELCH delivered the opinion of the court:

On April 14, 1979, appellants William and Catherine Daulby entered into a contract of guaranty with appellee Du Quoin State Bank. This instrument, denominated as a "continuing, absolute and unconditional guaranty," was given in consideration of any credits or advances made or to be made to Alfred and Wanda Atwood and the Egyptian Music Company, and was limited to $17,463.45. The contract provided that "liability hereunder shall in no wise be affected or impaired by *** any sale *** or other disposition of any of said indebtedness."

The bank eventually loaned a total of $97,740.68 to the Atwoods, which loans were secured by mortgages on the Atwoods' home and place of business in Du Quoin. The Atwoods defaulted on their loans, and on November 6, 1979, the bank filed a complaint in the circuit court of Perry County to foreclose the mortgages. Although these proceedings were stayed by the Atwoods' filing of a bankruptcy petition, that stay was modified in 1980, allowing further prosecution of that action.

In April 1980, the real estate belonging to the Atwoods was appraised at $90,000 by an appraiser hired by the bank. The bank wrote the Daulbys on April 28, notifying them of the pending sheriff's sale and informing them that the bank intended to bid $108,438.18 on the properties, which amount constituted the principal, interest and costs on the Atwoods' indebtedness through the date of the sale. The bank further stated that if its bid were accepted, it would resell the real estate and look to the Daulbys for any deficiency realized upon that sale, up to the amount of the guaranty. At the sheriff's sale, the bank, as the sole bidder, purchased the properties for $108,438.18.

On November 5, 1980, the bank informed the Daulbys that it intended to attempt to sell the properties at a public sale. No bids were received, and the bank then offered both parcels for private sale. The Atwoods' former residence sold in February 1981 for $50,000, and their place of business sold the following month for $38,000. These sales left the bank with a deficiency of $24,087.82 on the loans made to the Atwoods, and, on March 12, 1981, the bank demanded that the Daulbys pay the amount of their guaranty. They refused, and the present action, on that guaranty, was instituted in the circuit court of Perry County. It was agreed by the parties that the pleadings, which set forth the chronology presented above, posed no disputed issues of

material fact, and both sides moved for summary judgment. The court granted the bank's motion, entering judgment for the full amount of the guaranty, and the Daulbys have appealed.

It is a basic principle of guaranty law that payment or satisfaction of the principal obligation will operate to discharge the liability of a guarantor of that obligation. (*Baxter v. Continental Illinois National Bank & Trust Co.* (1940), 304 Ill. App. 117, 26 N.E.2d 179; *Mazur v. Stein* (1942), 314 Ill. App. 529, 41 N.E.2d 979; *Holm v. Jamieson* (1898), 173 Ill. 295, 50 N.E. 702.) The Daulbys contend, and the bank agrees, that the purchase of mortgaged property by the mortgagee, following foreclosure, for the total amount of the indebtedness secured by that property is considered to be full payment of that debt. (*Liberty Loan Association v. Bosen* (1927), 246 Ill. App. 362.) This result is merely a specific application of the rule that the amount received for property at a foreclosure sale is a conclusive measure of its value. (*First Granite City National Bank v. Champion* (1970), 130 Ill. App. 2d 970, 268 N.E.2d 35; *Chicago Joint Stock Land Bank v. McCambridge* (1931), 343 Ill. 456, 175 N.E. 834; *Loeb v. Stern* (1902), 198 Ill. 371, 64 N.E. 1043.) It is argued by the Daulbys that, because the bank's purchase of the Atwoods' properties for the full amount of the indebtedness satisfied the Atwoods' liability to the bank, their obligation on the guaranty should likewise be discharged.

The bank does not dispute these principles, but maintains that the satisfaction of the principal obligation does not extend to the guarantors in this case. It points out that the guaranty signed by the Daulbys specifically provided that it would not be affected or impaired by "any sale *** or other disposition of any of said indebtedness *** or of any security or collateral therefor." The language of this provision, it is stated, means that the result of the foreclosure sale should not prohibit the bank from recovering from the Daulbys its ultimate loss upon prompt resale.

An action to recover from the guarantors of a note is separate from the remedy of foreclosure and sale. (*Emerson v. La Salle National Bank* (1976), 40 Ill. App. 3d 794, 352 N.E.2d 45; *Berea College v. Killian* (1940), 304 Ill. App. 296, 26 N.E.2d 650.) Since those actions are separate, the liability of the guarantors must be determined from the instrument of guaranty (*Mazur v. Stein* (1942), 314 Ill. App. 529, 41 N.E.2d 979). The rules of construction applicable to contracts generally also apply to contracts of guaranty (*State Bank v. Cirivello* (1978), 74 Ill. 2d 426, 386 N.E.2d 43), and if such a contract is unambiguous, it must be enforced as written. (*Barrett v. Shanks* (1943), 382 Ill. 434, 47 N.E.2d 481; *Bank of Naperville v. Holz* (1980),

86 Ill. App. 3d 533, 407 N.E.2d 1102.) These principles apply even in cases such as this where the guaranty agreement contains broad statements of guarantor liability. *Bank of Naperville v. Holz.*

■ We believe that the clause relied upon by the trial court to establish the liability of the Daulbys is not ambiguous. There can be no doubt that the reference to "any sale" includes a foreclosure sale (*Blackhawk Hotel Associates v. Kaufman* (1979), 80 Ill. App. 3d 462, 400 N.E.2d 12, *rev'd on other grounds* (1981), 85 Ill. 2d 59, 421 N.E.2d 166), and the terms "affected" and "impaired" should be given their normal meanings as reducing, altering or eliminating that liability. This broad language indicates that the parties intended the guaranty to prevent the bank from suffering any actual loss in connection with its loans to the Atwoods, and did not mean that the Daulbys' obligations would be discharged through any presumed, but merely technical, satisfaction of the indebtedness, as occurred at the foreclosure sale.

Furthermore, even if we would consider the provision in question to be ambiguous, the conduct of the parties to this dispute shows our interpretations of the contract to be correct. (*Telegraph Savings & Loan Association v. Guaranty Bank & Trust Co.* (1978), 67 Ill. App. 3d 790, 385 N.E.2d 97.) Following the default of the Atwoods, the bank, in its dealings with the Daulbys, consistently informed them, even prior to the foreclosure sale, that it intended to look to the guaranty for recovery of any actual losses after that sale. To hold that the Daulbys' liability was discharged by the amount paid by the bank at the foreclosure sale would not effectuate the intent of the parties, as expressed through these transactions. It would also allow the Daulbys, who had notice of the bank's interpretation of the guaranty and remained silent until the present action was instituted, to benefit from their own inaction. We do not believe that such a result was contemplated by the parties.

Consequently, the trial court correctly granted the bank's motion for summary judgment for the full amount of the guaranty. The judgment of the circuit court of Perry County is hereby affirmed.

Affirmed.

JONES and KARNS, JJ., concur.