278

JEROME A. URBIK, Plaintiff-Appellee, v. ROBERT DeROSE, Defendant-Appellant.

First District (5th Division)   No. 86—0394

Opinion filed May 15, 1987.

John P. DeRose, of DeRose & Russo, of Chicago, for appellant.

Braun & Rivkin, Ltd., of Chicago (Bernard L. Rivkin, Nancy M. Barrett, and Craig P. Erlich, of counsel), for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff, Jerome Urbik, brought this action for reimbursement of amounts he paid as guarantor of three life insurance premium loans. On appeal, defendant, Robert DeRose, contends that the trial court erred in (a) entering summary judgment for Urbik and (b) denying his motion to file a counterclaim for contribution.

Although it is neither practicable nor necessary to present a detailed review of the entire record before us—which consists of nearly 1,500 pages divided almost equally between pleadings and transcripts—an understanding of the issues raised requires at least a brief chronological summary of the extensive procedural history of the litigation.

On November 22, 1982, Urbik filed a six-count complaint against DeRose and Charles Clary, Sr.,[1] alleging, in substance, that he (Urbik) was the general manager of Hinsdale Associates, an insurance agency authorized to underwrite policies of insurance issued by Mutual of New York Insurance Company (MONY); that DeRose was employed by MONY to work under his supervision as a field underwriter of

---

[1] It appears that Clary was never served with summons in this case and therefore took no part in the litigation.

such policies; that in December 1975, DeRose entered into a "Prime Participation Agreement" with Key Resources, Inc. (Key), a subsidiary of MONY, under which he was authorized to participate in a program for the financing of premiums on policies of insurance underwritten by him, including those at issue here on the lives of Charles Clary, Sr., and Clary's two sons; that pursuant to the terms of the agreement DeRose unconditionally guaranteed that he would pay Key, in prescribed monthly payments, all principal and interest due on the notes for the loans—which totalled $67,506.89—in the event of a default by the Clarys and he assigned all of his interests in and rights under the policies to Key as security for his performance; that in February 1976, he (Urbik) signed as a guarantor of the comprehensive financing agreement between DeRose and Key; that in August 1982, Key notified him that the loans were in default and demanded full payment thereof; that on August 23 he executed three promissory notes for the amounts due; that on August 30, Key assigned to him its interests and rights under the financing agreements; and that as assignee thereof, he thereafter demanded from DeRose reimbursement of the sums he paid on each loan—which totalled $15,678.76—but DeRose refused to pay the amounts owed. The complaint sought reimbursement thereof plus costs and attorney fees.

On April 11, 1983, DeRose moved to dismiss the complaint on the ground that the agreement was invalid because MONY and Key were not properly licensed to do business in Illinois and because, under the Illinois Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 1065.62), Clary was not qualified to receive premium financing. Following denial of the motion, DeRose filed his answer, reasserting as affirmative defenses the allegations stated above and additionally arguing that Urbik's payment of the amounts due on the notes constituted novation, which released him from any liability therefor.

In September 1983, Urbik filed a motion for summary judgment in response to which DeRose reiterated the defenses raised in his answer and further argued that the financing agreement was a contract of adhesion because, despite his ineligibility to participate in the premium financing program, he was required to execute the agreement as a condition of employment with Hinsdale Associates. Following a hearing—the transcript of which does not appear in the record—the trial court denied the motion without prejudice.

Depositions were thereafter taken, following which Urbik filed an amended motion for summary judgment together with his affidavit, various exhibits, and a memorandum in support thereof. No written response or counteraffidavits were filed by DeRose at that time. A

hearing was held on May 23, 1984, and, in addition to lengthy arguments by both attorneys regarding the points raised in the pleadings, depositions, and exhibits on file, counsel for DeRose also alleged in his oral argument that his client had been fraudulently induced to enter into the financing agreement by reason of certain material misrepresentations made to him by Urbik regarding the advantages of participation in the premium financing program and the low risks associated therewith. Rejecting counsel's argument that triable issues of fact existed as to this defense theory, the trial court granted summary judgment for Urbik on those counts of his complaint concerning DeRose's liability for the amounts due on the loans. The case was initially set for a June 14 trial on damages but was subsequently continued to June 28, the day after the scheduled hearing on DeRose's motion for reconsideration and vacatur of summary judgment as to liability. When counsel for DeRose appeared before the motion judge on June 27 and advised the court that the attorney who had filed the motion had since left his firm and that he was not prepared to argue it that day, the court declined to grant another continuance and denied the motion without prejudice, explaining that such an order would allow the prove-up of damages to proceed as scheduled without precluding DeRose from thereafter renewing his motion.

Nevertheless, the next day, defense counsel advised the jury trial assignment judge that he intended to refile his motion for reconsideration and requested another continuance of the hearing on damages. The matter was then referred back to the motion judge, who offered to hear arguments at that time, but when defense counsel repeated that he was unprepared to do so, the court—after noting the strenuous objections of opposing counsel and admonishing defense counsel regarding his responsibility to be prepared to argue his own motion—agreed to hear the motion at the next available opening on his contested motion calendar—which was determined to be September 25.

On September 20, counsel for DeRose filed a motion, supported by affidavit, for another continuance because of a conflict in his trial schedule. Over plaintiff's objection, the matter was continued to October 5 and then to October 10, whereupon DeRose sought to have admitted a counteraffidavit filed without leave of court the previous day in which he averred that Urbik had made fraudulent misrepresentations to induce him to enter into the financing agreement. Noting, again, the objections of plaintiff's counsel and commenting on the numerous delays and the "appearance of dilatory tactics" by the defense, the court nonetheless permitted the filing of DeRose's counteraffidavit and allowed Urbik 45 days to respond.

DeRose thereafter also filed, without leave of court, (1) the affidavit of a former colleague who alleged that he too had been fraudulently induced by Urbik's misrepresentations to enroll in the premium financing program and (2) a counterclaim charging Urbik with fraud and interference in his settlement negotiations with Key. After further continuances, the hearing on DeRose's motion for reconsideration was held on March 28, 1985.[2] Following argument by counsel, the motion was denied and the matter was thereafter set for a September 17, 1985, trial on damages. On August 22, DeRose filed an amendment to his answer, asserting Urbik's (a) failure to mitigate damages and (b) interference in settlement negotiations as additional affirmative defenses. The case was continued to September 20 for a hearing on pretrial motions, and, on September 24, the court entered an order (1) granting Urbik's motion *in limine* as to matters previously decided in the summary judgment proceedings, (2) denying Urbik's motion to exclude evidence relating to the settlement negotiations with Key, (3) denying DeRose's motion to set aside the assignment by Key to Urbik of the contracts at issue, and (4) denying DeRose's motion for leave to file his amended counterclaim for contribution from Urbik—which had been filed without such leave on September 19. The court further ordered that DeRose refrain from attempting to introduce evidence or otherwise refer to any alleged co-guarantor relationship as a means of obtaining a credit or setoff of damages.

On September 27, 1985, the trial court entered judgment on a jury verdict for Urbik in the amount of $15,195 plus costs; but, on November 22, after a hearing on DeRose's post-trial motion—the transcript of which has been omitted from the record before us—the court (1) vacated the judgment, (2) granted DeRose leave to file his counterclaim, and (3) ordered a new trial on the issue of damages.

Urbik then filed a timely motion for reconsideration and, after a hearing on January 21, 1986, the court entered an order in which it (1) vacated the November 22 order allowing DeRose's counterclaim and (2) reinstated judgment for Urbik. The court also included in that order its finding that DeRose was not precluded by that judgment from bringing a separate action against Urbik "for pro rata contribution upon principles of co-guarantorship," but that should DeRose prevail in such an action, "Urbik would be entitled to assert as a setoff the $15,195 [against] any sums awarded DeRose."

---

[2]The motion for reconsideration was not heard by the same judge who originally granted summary judgment, the former having been reassigned by that time.

Opinion

DeRose first contends that summary judgment was improperly entered against him on the issue of his liability for the loans in question, arguing that there were genuine issues of material fact regarding (a) his affirmative defense of fraudulent misrepresentation which, he maintains, "the court summarily dismissed *** on the basis of its opinion that 'he got what he bargained for' " and (b) the applicability of the terms of the general financing agreement between him and Key to the specific loan agreements at issue.

■ Regarding (a), it is well settled that to establish fraudulent misrepresentation, it must be shown that: the statement made was of material fact, as opposed to opinion; it was untrue and known or believed to be untrue by the party making it; it was made for the purpose of inducing the person to act; the person to whom it was made believed and relied on it and had a right to do so; and his reliance on it led to his injury. *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599; *Bank of Lincolnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 444 N.E.2d 657; *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 390 N.E.2d 393.

■ Initially, we note that our review of the procedural history of this case reveals that DeRose asserted a successive assortment of defense theories in the course of the proceedings and that it was not until midway through the May 1984 hearing on Urbik's motion for summary judgment—more than a year after his motion to dismiss—that his attorney claimed fraudulent misrepresentation, stating at that point, "I think this [fraud] is another issue ***." Notwithstanding defense counsel's failure to submit affidavits or other supporting documentation, or to even file a memorandum opposing summary judgment on the basis of fraud, the trial court allowed him, over the objections of Urbik's counsel, to orally present his theory of defense. Indeed, the court went so far as to enumerate the elements of actionable fraud as set forth in *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 390 N.E.2d 393, and then directed counsel to set forth the specific circumstances surrounding the execution of the finance agreement and/or notes at issue establishing each element. In response, however, counsel merely reiterated his earlier general allegations as to DeRose's unfamiliarity with premium financing arrangements and Urbik's failure to provide him with adequate training or to inform him of statistics on the financial risks to field underwriters who participated in Key's financing program. Following counsel's acknowledgement that DeRose entered into the specific agreements for the purpose of securing financing for the Clary's life

insurance premiums; that he did, in fact, obtain such financing in the form of the three loans at issue—on which he made payments, without complaint, for several years; and that had Clary not defaulted on his obligations thereunder, the financing arrangement would have been of significant financial benefit to him, the court found that DeRose had failed to raise a genuine issue of triable fact as to the defense of fraud and entered summary judgment for Urbik. On the basis of the record before it, we believe that the trial court was correct in both its findings and order.

■ With respect to the denial of his motion for reconsideration and vacatur of summary judgment, we note that it was not until five months after entry thereof and numerous continuances requested by him that DeRose sought leave to file his counteraffidavit; that the allegations contained therein were essentially the same as those considered at the hearing 10 months earlier, *i.e.*, that he was unfamiliar with the workings of the premium financing program and training was not made available to him and that Urbik both understated the failure rate within the program and misrepresented to him that within three to four years the case values of the policies would be sufficient to pay any outstanding debts in the event of a default; and that as in the previous hearing, he was given ample opportunity to explain in what way these representations constituted fraud. As counsel for Urbik argued, however, the pleadings, depositions, and other documents already on file not only failed to substantiate these allegations but, indeed, served to refute them.

For example, DeRose testified that he learned of the financing program in October 1975, when he informed his immediate supervisor and Urbik that he had been paying the monthly premiums on the Clarys' life insurance policies issued by Metropolitan Life Insurance Company. According to DeRose, "[t]hey started to just mention Key Resources and the Premium Financing, but nobody really went into detail. They just said 'we have this resource available through MONY.'" He also said that it was he who requested an explanation of the program in December 1975, at which time Urbik gave him information about it.

Also included in the record is a December 1975 letter to a Key loan officer which accompanied the personal financial statement necessary for approval of an underwriter's application for enrollment in the financing program. In it, DeRose explained that the Clary's family business was undergoing Chapter XI reorganization; that in exchange for his guarantee on a $25,000 promissory note, they had assigned ownership of the Metropolitan policies to him; that he was paying

$600 premiums on the policies each month, which, he stated, was "a burden very difficult for me to bear"; but that "[o]bviously, I believe in the future success of the [Clarys'] company to have committed to such a personal investment"; and that "I believe PRIME financing would only be available under my signature."

In addition, when asked at his deposition if participation in the program was a condition of employment in Urbik's agency, DeRose responded, in contrast to the assertion in his answer, that while participation was strongly encouraged, "No. I can't really say that they have put pressure on people to participate in the program." He also acknowledged that he read and understood the financing agreement before signing it in December 1975, although he added that he did not understand "all of the repercussions"; that he received the training manual detailing the program in January or February 1976; and that he also read the specific loan contracts before signing them on February 14, 1976.

Furthermore, Louis DiPietro, then vice-president of Key, testified that, ordinarily, premium financing was not approved for applicants, such as the Clarys, who had declared bankruptcy and that, initially, he had decided to disapprove DeRose's application for financing of their premiums, but that DeRose "took an active role in urging Key's approval of [it]." According to DiPietro, DeRose advised him, in correspondence and telephone conversations, that he could no longer afford the monthly premiums he was paying to Metropolitan on the policies and that by approving the loans, Key would be helping to relieve him of this burden while, nevertheless, having his assurance that he would pay the loans if the Clarys could not. DiPietro stated that at no time did DeRose indicate that he did not understand his legal obligations and that, in fact, he "frequently acknowledged and reaffirmed [them] and [his] personal liability to answer for any defaults caused by [the Clarys'] nonpayment." In view thereof, we fail to see any genuine issues of material fact as to DeRose's affirmative defense of fraud which rendered summary judgment improper. See, e.g., Du Quoin State Bank v. Daulby (1983), 115 Ill. App. 3d 183, 450 N.E.2d 339 (conduct manifesting an intent to be bound under a contract of guaranty is relevant where a court is called upon to interpret its terms and applicability).

We next consider DeRose's overlapping contentions that in addition to its error on the issue of fraud, the trial court abused its discretion in denying him leave to file his amended counterclaim against Urbik, which he correlatively, and circuitously, maintains would have shown there to be genuine issues of material fact as to the applicabil-

ity of the underlying financing agreement and, thus, precluded summary judgment.

In this regard, he first posits that the loans in question were not extended pursuant to the standard agreement used by Key in its Prime Participation Program under which *he* guaranteed full payment of the loans because under it Urbik would have been liable for only 15% of the first annualized premium. Instead, he maintains, the loans were approved solely on the basis of Urbik's 100% guaranty of them and that he was, therefore, entitled to contribution for the amounts he paid in excess of his "just share."

■ It is noteworthy that, although DeRose challenges the applicability of the standard agreement as to Urbik's obligations, he does not deny that he was liable to Key for the loans; indeed, he acknowledges that Key had the right to look to him "for full payment from the first day of default" and that following Urbik's remittance of the outstanding indebtedness, Key assigned all of its rights under the agreement to Urbik. There being no apparent dispute as to the extent of DeRose's liability, we cannot say that the court should have denied summary judgment on the basis of a modification in the agreement concerning the extent of Urbik's obligations thereunder. See *Bank of Homewood v. Sjo* (1983), 113 Ill. App. 3d 179, 446 N.E.2d 1214 (a disagreement on the meaning of certain terms in a written guaranty did not render summary judgment improper where defendant's guaranty clearly extended to the note in question).

Turning then to the propriety of the trial court's ruling denying DeRose leave to file his amended counterclaim, we note first that the parties have argued at length, both in their briefs and in their appearance before us, not only as to whether the trial court abused its discretion in disallowing the proffered counterclaim on the ground that DeRose's attempt to file it only a few days before the trial on damages—more than 2½ years after commencement of this action—was untimely, but also on questions relating to the merits of it and whether the court correctly found that it was not barred by *res judicata*.

However, while it is true that the trial court originally disallowed the counterclaim on the ground that it was barred, under the doctrine of *res judicata*, by the entry of summary judgment for Urbik—noting secondarily that, in any event, it was not timely filed—the court ultimately retracted that ruling and expressly stated that the sole basis of its order denying leave to file the counterclaim was that it was untimely and would have resulted in substantial prejudice to Urbik were he compelled to defend against it at such a late stage in the pro-

tracted proceedings. Although the court included in the final paragraph of the written order reinstating judgment for Urbik a finding that DeRose was not precluded thereby from bringing a separate action against Urbik for contribution—we agree with Urbik's characterization of this statement as "essentially gratuitous surplusage." Consequently, the questions argued by the parties concerning the merits of the counterclaim and/or whether it was barred by *res judicata* are not at issue here, and any discussion thereof would constitute nothing more than *dictum*.

Furthermore, in the light of the events occurring subsequent to entry of the final order in this case, we have determined that we must refrain as well from making any pronouncements on the propriety of the court's determination that the counterclaim was untimely.

■ It has repeatedly been held that the courts of this State should not decide a question when it has notice of facts which have rendered the question moot. A question is said to be moot where no actual controversy exists or where events occur which prevent the court from granting effectual relief and would result in an opinion having only an advisory effect. *George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 491 N.E.2d 1160; *People ex rel. Black v. Dukes* (1983), 96 Ill. 2d 273, 449 N.E.2d 856; *Bluthardt v. Breslin* (1979), 74 Ill. 2d 246, 384 N.E.2d 1309; *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 121 N.E.2d 486.

■ In the instant case, we have learned, and take judicial notice, that shortly after filing his notice of appeal, DeRose commenced an action (No. 86 L 5885) in the Cook County circuit court against Urbik containing the same allegations as those in the disallowed counterclaim. By filing this new and independent action, he has, in effect, withdrawn or abandoned his former counterclaim (see, *e.g., Village of Lake Bluff v. Jacobson* (1983), 118 Ill. App. 3d 102, 454 N.E.2d 734), thus rendering any decision we might reach as to the propriety of the trial court's order disallowing it as untimely wholly academic. Specifically, assuming we were to find that the trial court abused its discretion in denying him leave to file the counterclaim, the only relief we could grant would be remandment of the cause with instructions to allow it. Since our affirmance of summary judgment for Urbik leaves nothing pending in his case against DeRose, the practical effect of such an order would merely be to allow DeRose to bring a separate action against Urbik—which he has already done. Likewise, a ruling that the counterclaim was properly denied as untimely would be of no practical consequence in the light of the fact that it has since been refiled, albeit in the form of a complaint.

Thus, for the reasons stated, we affirm that portion of the trial court's order entering summary judgment for Urbik without expressing any view on the denial of DeRose's motion for leave to file his amended counterclaim for contribution.

Affirmed.

LORENZ and MURRAY, JJ., concur.