143 So. 43

## VOLUNTEER STATE LIFE INS. CO. v. UNION TITLE GUARANTEE CO., Inc.

### No. 31777.

June 20, 1932.

Rosen, Kammer, Wolff & Farraer, of New Orleans, for appellant.

Eugene J. McGivney and Solomon S. Goldman, both of New Orleans, for appellee.

O'NIELL, C. J.

This is a suit on a policy of insurance, guaranteeing the title to certain property in New Orleans. The plaintiff held ten promissory notes, amounting to $10,000, secured by a mortgage on the property, and held a guaranty policy in which the defendant, title guaranty company, promised to pay to the assured all loss or damage, not exceeding $10,000, which the assured might sustain or suffer by reason of the failure or unmarketability of, defects in, incumbrances upon, or liens or charges against, the title of the mortgagor. The mortgage for $10,000 was believed to be the first and only mortgage on the property, but in fact there was a mortgage previously recorded against the property, for $17,500; which mortgage, by accident, was omitted from the mortgage certificate. The Southern Casualty Company, having the $17,500 mortgage, foreclosed by executory proceedings, and on the 11th of December, 1930, about a year after the Volunteer State Life Insurance Company had acquired the $10,000 mortgage, the sheriff sold the mortgaged property, at public auction, in the foreclosure proceedings, and it was bought in by the receivers for the Southern Casualty Company, for $2,500; that is, for $15,000 less than the amount due to the company.

The plaintiff here, having the mortgage for $10,000, notified the defendant, title guaranty company, of the foreclosure proceedings instituted by the Southern Casualty Company on the $17,500 mortgage, as soon as the proceedings were instituted, and, soon after the sheriff's sale was made, brought this suit on the policy for $10,000. The defendant, answering the suit, admitted the facts which we have stated, and admitted liability for $2,500, but denied liability for any further sum, contending that the only criterion of the value of the property, or the amount of the security which the plaintiff had lost, was the price for which the property was sold by the sheriff at public auction.

Immediately after the defendant's answer was filed, the plaintiff obtained a rule on the defendant to show cause why a judgment should not be entered for the $2,500, with interest and costs, and without prejudice to the right of the plaintiff to prosecute the suit for the remaining $7,500. A judgment was rendered accordingly, and was paid by the defendant; and, after trial of the case on its merits, judgment was rendered in favor of the plaintiff for the remaining $7,500, with interest and costs. From that judgment the defendant has appealed.

There are only two questions presented. The first question is whether the price at which the property was sold by the sheriff in the foreclosure proceedings is the only criterion of the value of the security which the plaintiff lost; and, if that is not the only criterion, or only admissible evidence, of the value of the property, the next question is whether the evidence which the plaintiff introduced is sufficient to prove that the property was worth $10,000.

We affirm the ruling that the price for which the property was sold at public auction by the sheriff in the foreclosure proceeding was not the only criterion of the value of the property, or of the amount of the security which the plaintiff lost. In fact, the price at which the property was sold by the sheriff in this instance was not a criterion of its value at all, because, according to the terms

of the act of mortgage, the sale was made without appraisement, or limitation upon the authority of the sheriff to accept any bid, and the amount of the mortgage being foreclosed, $17,500, was far more than the property was worth. In such cases there is no inducement for the plaintiff in the foreclosure proceeding to bid as much as the value of the property, or for any one else to bid at all, except perhaps the defendant, and, as a general rule, he has nothing to bid with.

The appellant cites and relies upon an Illinois case, Loeb v. Stern, 198 Ill. 371, 64 N. E. 1043, and a Pennsylvania case, Pennsylvania Co. v. Central Trust & Savings Co., 255 Pa. 322, 99 A. 910, 911. These decisions are not appropriate to the facts of the case before us. Loeb v. Stern was not a suit on a policy of insurance, guaranteeing a title. The defendants had sold the plaintiff certain mortgage notes under an agreement to take them back at their par value and accrued interest, less one per cent. commission, on 30 days' notice. The defendants defaulted on the agreement, and the plaintiff foreclosed the mortgage, bought in the property for less than the amount of the notes, took a deficiency judgment against the maker for the unpaid balance, and brought suit therefor against the parties who had sold the notes to the plaintiff. It was under those circumstances that the Illinois court said that the deficiency judgment afforded "a just estimate of the damages occasioned by the refusal to repurchase," and that evidence of the value of the property was not admissible, without proof of fraud or irregularity. The theory of the decision, as we understand it, was that the defendants were estopped by their breach of contract from complaining of the amount of

the deficiency judgment, especially because one of the members of the defendant firm was made a party to the foreclosure proceedings. Be that as it may, the ruling made in that case would not be appropriate to the facts of this case. The Pennsylvania case, relied upon by appellant, was a suit on a policy guaranteeing the payment of any loss or damage that the holder of the policy, as mortgagee, might suffer by reason of the noncompletion of the buildings being constructed on the mortgaged property. The plaintiff complained of having sustained a loss by reason of a defect in the heating apparatus in one of the buildings. The plaintiff had released a part of the property from the mortgage, and had thereby lost the power to comply with a provision in the policy that, in case of payment of a loss under the policy, the insurer should be subrogated to any and all rights which the insured would have had against any other person or property if the policy had not been issued; and the court said: "The single question before this court, under the facts of the case, is the proper construction of the subrogation clause in the policy." Hence the following statement by the court was not a part of the decision, or essential to the decision of the case, viz.: "If sale had been made under foreclosure proceedings, and, because of the unfinished condition of the buildings, the properties were purchased by a third person at a sum insufficient to meet plaintiffs' claim, the measure of damage would be fixed."

The idea that the price at which property sells at a forced sale is the only criterion, or always a reliable criterion, as to its cash value, is not in accord with the rule for assessing property for taxes. Section 91 of

Act No. 170 of 1898, subsection 6, p. 386, declares that the term "actual cash value" means the price at which a given piece of property would sell for in cash in the ordinary course of business, free from incumbrance, and otherwise than at forced sale. The definition of "cash value" given in 11 C. J. 25 is, "The usual selling price at private sale and not at a forced or auction sale."

■ The evidence introduced by the plaintiff in this case convinces us that the mortgaged property was worth more than $10,000. It was assessed for taxes at $12,000 in the year in which it was sold in the foreclosure proceedings, and the buildings on the property were then, and had been for eleven years, insured for $15,000. The property was appraised at $20,000 when the plaintiff's mortgage was acquired, and was sold by the Southern Casualty Company for $12,000 nine months after the company bought it at the sheriff's sale. Our conclusion, therefore, is that the judgment appealed from is correct.

The judgment is affirmed.