# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 14, 2009

Charles R. Fulbruge III
Clerk

No. 07-31033

FIRST AMERICAN BANK,

Plaintiff–Appellant,

v.

FIRST AMERICAN TRANSPORTATION TITLE INSURANCE CO.,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and OWEN and SOUTHWICK, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Appellant First American Bank (First American or Bank) appeals a grant of summary judgment in favor of appellee First American Transportation Title Insurance Co. (FATTIC). The district court ruled that the measure of indemnity under First American's insurance policy is limited to the amount by which the payments to the holders of the priming liens for necessaries reduced First American's recovery on its ship mortgages and that the Policy did not allow First American to recover consequential damages. We affirm in part, reverse in part, and remand for further proceedings.

**I**

In 2004, First American loaned Titan Cruise Lines, Inc. (Titan) $28,000,000 to support Titan's operation of a gaming vessel known as the Ocean Jewel. As collateral for this loan, Titan executed ship mortgages in favor of First American on the Ocean Jewel, and on the Emerald Express (Emerald) and the Sapphire Express (Sapphire)—two high speed catamarans used to shuttle customers back and forth from land to the Ocean Jewel.

FATTIC issued two separate title insurance policies to First American. The first policy secured the Ocean Jewel and the second policy—the policy at issue in this case—secured the Emerald and the Sapphire. The policies cross-referenced each other and provided a single aggregate coverage limit of $28,000,000—the value of First American's loan to Titan.

The primary insuring clause of the policy on the Emerald and the Sapphire (Policy) provides that FATTIC shall be liable for "actual loss or damage . . . sustained or incurred by [First American] by reason of" any of nineteen specifically enumerated risks. Relevant to this matter, these "covered risks" included: "3. Unmarketability of the Title"; "11. The failure of the Insured Mortgage to have the equivalent priority of a Preferred Mortgage as defined in 46 U.S.C. § 31322"; and

> 14. Lack of priority of the Mortgage insured hereunder over any statutory lien for Necessaries (as that term is defined in 46 U.S.C. § 31301 or its equivalent under the law of Panama) provided to the Vessels prior to or after the Date of Policy whether or not the statutory lien for Necessaries arises prior to or after the Date of Policy.

In the event that First American proves that it has sustained a covered loss, Section 7 of the Policy determines the extent of FATTIC's liability. Section 7, "DETERMINATION AND EXTENT OF LIABILITY," provides, in relevant part:

> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.
>
> (a) The liability of the Company under this policy shall not exceed the least of:
>
> . . . .
>
> (iii) The difference between the value of the Title as insured and the value of the Title subject to the defect, lien, or encumbrance insured against by this policy . . . .
>
> . . . .
>
> (c) The Company will pay only those costs, attorney's fees and expenses incurred in accordance with Section 4 of these Conditions.

Under the Policy, except when the law of Panama or the federal law of the United States must be applied, resolution of any dispute is to be determined by Louisiana law.

In August 2005, Titan filed for bankruptcy in the Tampa Division of the United States District Court for the Middle District of Florida. At the time Titan filed the proceedings, the Ocean Jewel, the Emerald, and the Sapphire were encumbered by necessaries liens resulting from debts owed to suppliers of necessaries for the vessels. In January 2006, the bankruptcy court approved the sale of the Ocean Jewel.

Originally, the Sapphire was to be sold at auction with the Ocean Jewel. However, the Sapphire was deleted from the sale after the vessel took on water and sank at her moorings. After the Sapphire sank, the bankruptcy court ordered that the costs Tampa Bay Shipbuilding and Repair Company (TBSR) incurred in keeping and maintaining the Sapphire were "super-priority" claims superior to any maritime lien on the vessel. Additionally, the bankruptcy court

ordered that Titan's abandonment of the Sapphire be approved. Subsequent to the bankruptcy court's orders, TBSR filed an in rem action against the Sapphire in the United States District Court for the Middle District of Florida. As a result of those proceedings, U.S. Marshals seized the Sapphire and sold it to TBSR at public auction for $99,227, the value of TBSR's liens.

Similarly, Eastern Shipbuilding Group, Inc. (Eastern) filed an in rem action against the Emerald. The result of this action mirrored that of TBSR's in rem action against the Sapphire—U.S. Marshals seized the Emerald and sold it to Eastern at public auction for a credit bid of $10,000, a portion of Eastern's $597,352.72 necessaries liens.

First American filed suit after FATTIC refused to pay anything on the Emerald or Sapphire above the amounts paid to TBSR and Eastern in the foreclosure sales. First American claimed, inter alia, damages for breach of contract and breach of the duty of good faith and fair dealing.

FATTIC filed a motion for partial summary judgment requesting a declaratory judgment that the measure of indemnity is limited under Section 7(a)(iii) of the Policy to the amount by which the payments to the holders of the priming liens for necessaries reduced First American's recovery on its mortgages. The district court adopted FATTIC's position and also held that the Policy did not allow First American to recover consequential damages. The district court certified its interlocutory decision for appeal, and this court accepted jurisdiction pursuant to 28 U.S.C. § 1292(b).

## II

This court reviews a grant or denial of summary judgment de novo, applying the same standard as the district court.[1] Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and

---

[1] *Robinson v. Orient Marine Co. Ltd.*, 505 F.3d 364, 365 (5th Cir. 2007) (citing *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 2003)).

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2] Any reasonable inferences are to be drawn in favor of the non-moving party.[3] Because the interpretation of an insurance policy is a question of law,[4] we review the district court's determination de novo.[5]

## III

By its express terms, FATTIC's title policy is governed by the law of Louisiana. Louisiana law provides that an insurance policy is a contract between the parties and should be construed using the general rules of contract interpretation set forth in the Louisiana Civil Code.[6] The words used in an insurance policy must be given their generally prevailing meaning.[7] "[W]hen the 'language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation.'"[8] Further, each provision of an insurance policy "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[9] Insurance policies "should not be interpreted in an unreasonable or strained manner so as to

---

[2] Fed. R. Civ. P. 56(c).

[3] *Robinson*, 505 F.3d at 366 (citing *Gowesky*, 321 F.3d at 507).

[4] *Principal Health Care of La., Inc. v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994); *Bonin v. Westport Ins. Corp.*, 2005-0886, pp. 4-5 (La. 5/17/06); 930 So. 2d 906, 910.

[5] *Principal Health Care of La., Inc.*, 38 F.3d at 242.

[6] *Bonin*, 2005-0886, at pp. 4-5; 930 So. 2d at 910; *Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 516 (5th Cir. 2005).

[7] LA. CIV. CODE ANN. art. 2047; *Bonin*, 2005-0886, at p. 5; 930 So. 2d at 910; *Coleman*, 418 F.3d at 516.

[8] *Coleman*, 418 F.3d at 518 (quoting *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94); 630 So. 2d 759, 764); *see also* LA. CIV. CODE ANN. art. 2046.

[9] LA. CIV. CODE ANN. art. 2050; *Coleman*, 418 F.3d at 517.

enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[10]

As has been noted, Section 7(a)(iii) states, in relevant part, that the "liability of the Company under this policy shall not exceed the least of: . . . (iii) The difference between the value of the Title as insured and the value of the Title subject to the defect, lien, or encumbrance insured against by this policy." The district court interpreted this language to mean that FATTIC's liability is limited to the difference between the value of First American's ship mortgages when unencumbered and the value of First American's ship mortgages subject to the necessaries liens. Based on this language, the district court also went on to state that the Bank's recovery is limited to the amount by which First American's recovery on its mortgages was reduced by payments to the holders of the priming liens for necessaries. While we agree that FATTIC's liability under the Policy is limited to the difference between the value of First American's ship mortgages when unencumbered and the value of First American's ship mortgages subject to the necessaries liens, we disagree that the difference in values is to be determined solely by the proceeds recovered from the foreclosure sale.

The Louisiana Supreme Court, in *Volunteer State Life Insurance Co. v. Union Title Guarantee Co.*,[11] has previously held that courts must take into account other information, in addition to foreclosure sale proceeds, when valuing a property for title-insurance purposes. In *Volunteer State Life*, a title insurer

---

[10] *Coleman*, 418 F.3d at 517; *Bonin*, 2005-0886, at p. 5; 930 So. 2d at 910-11; *see also* LA. CIV. CODE ANN. art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.").

[11] 143 So. 43 (La. 1932).

insured the plaintiff's $10,000 mortgage on a certain property.[12] However, neither party had knowledge of a previously recorded $17,500 mortgage by a third party, Southern Casualty Company (SCC).[13] After SCC foreclosed by executory proceedings, the sheriff sold the mortgaged property at public auction for $2,500 to the receivers for SCC—"that is, for $15,000 less than the amount due to the company."[14] The plaintiff then brought suit against the title insurer for $10,000.[15] Although admitting liability for $2,500, the defendant contended that "the only criterion of the value of the property, or the amount of the security which the plaintiff had lost, was the price for which the property was sold by the sheriff at public auction."[16] The Louisiana Supreme Court disagreed, concluding that the foreclosure auction price "was not the only criterion of the value of the property, or of the amount of the security which the plaintiff lost."[17]

Based on *Volunteer State Life*, the district court erroneously confined the loss in value suffered by First American solely to the amounts bid at foreclosure sale of the two catamarans. Instead, the finder-of-fact must take into consideration all other relevant information when valuing loss under a title insurance policy. Accordingly, we hold that a determination of the value of First American's unencumbered ship mortgages and the value of the mortgages subject to the necessaries liens raises genuine issues of material fact based upon any appraisals, the foreclosure proceeds, and other market data. In light of this holding, we also remand for the determination of the proper date of valuation.

---

[12] *Id.* at 43.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.* at 44.

## IV

The district court also ruled that the Policy did not allow for the recovery of consequential damages. We agree.

The Policy begins by stating that FATTIC insures "against actual loss or damage." Section 7 also reiterates that the parties entered into a "contract of indemnity against actual monetary loss or damage." While the Policy provides for some recovery other than "actual loss or damage," it limits such payments to costs, attorney's fees, and expenses incurred in accordance with defending and prosecuting a claim adverse to the insured. The Policy does not mention consequential damages.

Under Louisiana law, the words used in an insurance policy must be given their generally prevailing meaning.[18] To determine the generally prevailing meaning in an insurance contract, Louisiana courts often resort to the use of *Black's Law Dictionary*.[19] According to *Black's*, "actual loss" is "[a] loss resulting from the real and substantial destruction of insured property."[20] *Black's* makes reference to "actual loss" when it defines "actual damages" as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses."[21] In contrast, *Black's* separately defines "consequential loss" as "[a] loss arising from the results of damage rather than from the damage

---

[18] L A. CIV. CODE ANN. art. 2047; *Bonin v. Westport Ins. Corp.*, 2005-0886, p. 4-5 (La. 5/17/06); 930 So. 2d 906, 910; *Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 516 (5th Cir. 2005).

[19] *See, e.g., Campbell v. Markel Am. Ins. Co.*, 2000-1448, p. 11 (La. App. 1 Cir. 9/21/01); 822 So. 2d 617, 624; *McGuire v. Davis Truck Servs., Inc.*, 518 So. 2d 1171, 1174 (La. App. 5 Cir. 1988).

[20] B LACK'S LAW DICTIONARY 963 (8th ed. 2004).

[21] *Id.* at 416.

itself," and notes that it is "[a]lso termed *indirect loss*; *consequential injury*."[22] According to *Black's*, "consequential damages" entail "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act."[23] A plain reading of "actual loss or damage" does not include "consequential loss" or "consequential damage."

The plain language of the Policy allows for recovery of "actual loss or damage" and not consequential damages. Therefore, we conclude that the Policy does not allow for the recovery of consequential damages.

\* \* \*

We hold that the determination of the value of First American's ship mortgages unencumbered and subject to the necessaries liens involves genuine issues of material fact. We also hold that First American is not entitled to consequential damages. Accordingly, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

---

[22] *Id.* at 964.

[23] *Id.* at 416.