# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 31, 2011

No. 11-30422
Summary Calendar

Lyle W. Cayce
Clerk

LILLIE D. BOOZE KITTLING,

Plaintiff – Appellant

v.

CENTENNIAL BEAUREGARD CELLULAR, L. L. C., doing business as
Centennial Wireless,

Defendant – Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:08-CV-01482-DDD-JDK

Before KING, JOLLY, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Lillie D. Booze Kittling brought suit against
Defendant–Appellee Centennial Beauregard Cellular, L.L.C., alleging her
employment was terminated in violation of Title VII of the Civil Rights Act of
1964. Although Plaintiff–Appellant was newly hired and absent from work
between sixteen and eighteen times in just over three months of employment,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-30422

she asserts that she was terminated for reasons related to her race. The district court granted summary judgment for Defendant–Appellee, and we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff–Appellant Lillie D. Booze Kittling ("Plaintiff"), an African-American woman, was hired by Defendant–Appellee Centennial Beauregard Cellular, L.L.C. ("Defendant") on August 14, 2007 to work as a sales representative. Upon hiring Plaintiff, Defendant provided her with documentation explaining its employment policies, including its attendance, sick-leave, and vacation policies during the employee's first ninety days (the "orientation period"), as well as the period that followed. Under Defendant's policies, employees risk termination if they exceed two absences during the orientation period. Plaintiff, however, suffered a number of medical issues early in her tenure that resulted in fifteen absences during her orientation period.

Despite Plaintiff's absences, Defendant did not terminate Plaintiff's employment during her orientation period. Shortly after the end of Plaintiff's orientation period, however, Plaintiff continued to miss work, and Defendant decided to terminate her on November 28, 2007. In the roughly three months Plaintiff was employed by Defendant, Plaintiff had been absent between sixteen and eighteen days.[1] Again, despite Plaintiff's absences, Defendant indicated it was willing to rescind Plaintiff's termination if Plaintiff could produce documentation demonstrating that all her absences were for medical reasons. Plaintiff failed to produce documentation for every day she missed and ultimately ceased communicating with Defendant. Defendant subsequently terminated Plaintiff's employment.

---

[1] The parties dispute the number of Plaintiff's absences following the orientation period. Defendant asserts that Plaintiff missed three days following the orientation period, but Plaintiff admits to incurring only one unexcused absence during the post-orientation period, contending she was not scheduled to work the other two days. This disputed issue of fact does not affect our analysis.

No. 11-30422

After filing an unsuccessful complaint with the Equal Employment Opportunity Commission, Plaintiff brought suit against Defendant in the United States District Court for the Western District of Louisiana, asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Plaintiff later ceased to assert her claim under the ADA but continued to allege Defendant violated Title VII. Defendant moved for summary judgment, arguing that Plaintiff had failed to establish a prima facie case of discrimination and could not rebut Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff—her excessive absences. In response, Plaintiff argued that Defendant had waived any ability to terminate her for her absences during the orientation period because Defendant allowed her to continue her employment beyond her first ninety days. Plaintiff contended that she was terminated for a single unexcused absence during her post-orientation period, and Plaintiff argued that Defendant's attendance policies show that Plaintiff's termination reflects disparate and discriminatory treatment because, under her reading of Defendant's policies, termination is not properly based on a single absence. The district court rejected Plaintiff's arguments and dismissed her suit with prejudice. Plaintiff now appeals.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo and apply the same standard as the district court. *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 836–37 (5th Cir. 2009). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A genuine issue of material fact exists if a reasonable jury could

3

enter a verdict for the non-moving party." *Castellanos–Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 397 (5th Cir. 2010).

Under Title VII, "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). When there is no direct evidence of unlawful discrimination, we analyze a plaintiff's claims under Title VII using the framework set out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined in subsequent cases. Under *McDonnell Douglas*, the plaintiff must carry the initial burden of establishing a prima facie case of racial discrimination. *Id.* at 802. A plaintiff may do this by showing (1) she belongs to a racial minority; (2) she was qualified for the job she held; (3) she was discharged or suffered some adverse employment action by the employer; and (4) she was replaced by someone who is not a member of her protected group or was treated less favorably than similarly situated individuals. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

When the plaintiff has established its prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the employee's termination. *See McDonnell Douglas*, 411 U.S. at 802. "This burden is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the defendant carries this burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "Although intermediate evidentiary burdens shift back and forth under th[e *McDonnell Douglas*] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"

No. 11-30422

*Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253). Further, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.

The district court found that summary judgment was warranted both because the Plaintiff failed to make a prima facie case of discrimination and did not rebut Defendant's legitimate reasons for terminating Plaintiff's employment. *Kittling v. Centennial Beauregard Cellular*, No. 1:08-CV-1482, at 7 (W.D. La. Mar. 31, 2011). Plaintiff has not presented any direct evidence of unlawful discrimination, so we analyze whether she has established a prima facie case for discrimination under the *McDonnell Douglas* framework discussed above. Neither party disputes that Plaintiff was a racial minority, that she was qualified for the job she held, or that she was discharged from employment. The final element of Plaintiff's prima facie case, however, is in dispute. Plaintiff has not alleged, and the evidence does not show, that she was replaced by someone who was not a member of her protected group. *See id.* at 8 (discussing Defendant's increased staffing of the type of position formerly held by Plaintiff with African-American employees following her termination). Thus, our focus turns to Plaintiff's evidence that her termination indicates that she was treated less favorably than similarly situated individuals.

Defendant's attendance policy states that "[d]uring an associate's orientation period (first 90 days of employment), excessive absenteeism shall be defined as any absence in excess of 2 working days. Absences in excess of 2 working days during the orientation period will ordinarily result in termination." Following the orientation period, "[e]xcessive absenteeism is defined as any absence in excess of 7 days from January through December 31st," subject to exclusions including approved medical leave but not sick days. The policy

provides for termination on the eleventh absence that is not expressly excluded from the attendance policy.

Plaintiff contends that "[D]efendant's attendance policy allows other employees similarly situated as [P]laintiff who are not African American . . . to be treated more favorabl[y] than [P]laintiff." Although Plaintiff was absent fifteen times during the first ninety days of her employment and continued to miss work in the period that followed, Plaintiff contends that she was terminated for a single unexcused absence. Plaintiff bases this contention on the fact that she had medical excuses for all but one absence following her orientation period. Plaintiff concedes that "Defendant had the option to fire [Plaintiff] during the probationary period," but asserts that "[Defendant] chose not to [fire Plaintiff during the orientation period] and, therefore, waived any use of those absences during the orientation period after [D]efendant made [P]laintiff a permanent employee." Firing an employee for a single absence, Plaintiff argues, is not permitted under Defendant's attendance policies, which Defendant should apply equally to all employees. Thus, Plaintiff contends Defendant's policies show that similarly situated individuals would be treated more favorably by Defendant.

We agree with the district court, however, that Plaintiff's description of her termination for a single unexcused medical absence "profoundly mischaracterizes" the circumstances surrounding Plaintiff's termination. *See id.* at 9. Plaintiff was hired on August 14, 2007, and missed fifteen days of work during her first ninety days of employment. Defendant's attendance policy, however, allowed Plaintiff to miss only two days before termination would be appropriate. Plaintiff accrued at least one more unexcused absence during the short interval of time from the end of her orientation period until she was terminated on November 28, 2007. Thus, Plaintiff's suggestion that her

attendance record should be deemed unblemished but for a single unexcused absence is simply untenable.

Like the district court, we also find that Plaintiff has misconstrued Defendant's policies related to attendance. *See id.* (describing Plaintiff's interpretation of Defendant's policies as a "willful distortion"). Although Defendant's attendance policy deals separately with the orientation period for new employees and the period that follows, this does not mean that absences accrued during the orientation period cannot be considered in the term that follows, particularly in the weeks that immediately follow. *See id.* at 2 ("Simply because Defendant did not immediately fire Plaintiff after her first absences and instead gave her a second chance does not mean those absences were somehow waived for considering whether to retain Plaintiff in the immediate future."). Defendant's policies nowhere indicate that absences during the orientation period become irrelevant in the post-orientation period, and thus we find no support for Plaintiff's argument that Defendant waived the ability to consider these absences when assessing whether to terminate Plaintiff's employment.

Further, Plaintiff attaches much weight to the fact that she had medical reasons substantiated by a doctor for many, but not all, of her absences. Defendant's policies, however, do not provide that absences due to medical illness are excused, approved, or otherwise excluded from consideration when determining whether to terminate an employee. In fact, Defendant's attendance policy expressly notes that sick days are considered when assessing absenteeism.[2] Defendant's policies further provide that "eligibility for sick pay begins after completion of [the] 90-day orientation period. Thereafter, new

---

[2] Defendant's policy provides that excluded absences are those it voluntarily approves as well as federally mandated medical leave. These exclusions, however, do not apply to Plaintiff's absences. *See Kittling*, No. 1:08-CV-1482, at 2 (noting that Plaintiff had no legal right to medical leave).

associates accrue one-half (½) paid sick day for each full month worked during the first calendar year of employment." Defendant's policies further provide that vacation begins to accrue at the rate of one day per month following the orientation period. Thus, Plaintiff had not earned sufficient leave to account for her admitted absence on November 25, 2007.

An addendum to Defendants attendance policy defines "excessive absenteeism" after the completion of the orientation period as "any absence in excess of 7 days from January 1 through December 31st," subject to exclusions that do not apply to the instant case. However, we do not interpret this as a guarantee that Defendant's employees may be absent for seven days without risking termination, particularly at the beginning of an employee's post-orientation period. As we discussed above, Plaintiff had yet to earn the time off for the day she admits to missing without excuse. Moreover, Plaintiff completed her orientation on November 11, 2007, and was absent without excuse for at least one day before she was terminated November 28, 2007. We cannot read Defendant's policies to suggest that even a single absence following Plaintiff's orientation period would necessarily be tolerated before it was earned. Moreover, we find that Defendant's policies neither state nor imply that an employee who has missed between sixteen and eighteen days of work in roughly three months would not be terminated. Thus, Defendant's policies do not show that Plaintiff's termination reflected disparate treatment.

Because Defendant's policies do not show that other employees would receive more favorable treatment than Plaintiff received, the burden remains on Plaintiff to come forward with evidence of disparate treatment sufficient to make her prima facie case. We agree with the district court that, when addressing whether similarly situated individuals were treated more favorably, the proper comparison is between Plaintiff and individuals with numerous absences, as opposed to employees with a single unexcused absence, as urged by Plaintiff. As

the district court noted, "Plaintiff again presents no evidence . . . to show that any employee who ever missed such a significant period of work – much less so early in their tenure – was not terminated." *Kittling*, No. 1:08-CV-1482, at 9. Defendant, on the other hand, has offered evidence that a Caucasian employee was terminated during his orientation period after only four absences. Plaintiff offers nothing to rebut this or to establish any other evidence of disparate treatment. Instead, Plaintiff relies exclusively on her misinterpretation of Defendant's attendance policies. Thus, we agree with the district court that Plaintiff has presented no evidence that she suffered from disparate treatment and has thus failed to establish her prima facie case of discrimination.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court. Costs shall be borne by Plaintiff.