# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30344

United States Court of Appeals
Fifth Circuit

**FILED**

November 21, 2013

Lyle W. Cayce
Clerk

SUSAN GIBBENS,

Plaintiff–Appellant,

v.

CHAMPION INDUSTRIES, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-868

Before OWEN, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

Plaintiff–Appellant Susan Gibbens sued Defendant–Appellee Champion Industries, Incorporated (Champion) for breach of contract based on Champion's alleged failure to pay Gibbens sales commissions in accordance with the formula in Gibbens's modified employment contract.  The district court granted summary judgment in favor of Champion on the ground that no valid modification of Gibbens's employment contract occurred.  Gibbens

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30344

appeals the district court's judgment.  Because genuine disputes as to material facts exist, Champion is not entitled to judgment as a matter of law.  We reverse and remand.

## I

The undisputed facts are as follows.  Between 1993 and 1995, Gibbens began working as a salesperson in the New Orleans office of Upton Printing Company (Upton).  She was paid commissions under a "value added" formula, which amounted to eleven percent of the difference between the print job sales price and outside expenses, less her salary.[1]  Upton was acquired by Champion by the end of 1995.  Gibbens continued to work in New Orleans as a salesperson for Champion under the same commission formula for at least the next ten years.

After Hurricane Katrina in 2005, Champion closed its New Orleans office and placed its New Orleans operations under the management of Doug McElwain, the division manager for Bourque Printing (Bourque), a subsidiary of Champion in Baton Rouge.  McElwain informed Gibbens that she would report to him directly.  Gibbens contends that effective sometime in 2006, McElwain changed her commission structure to conform to that of all the other salespersons, with the exception of new employees who were on probation.  It is undisputed that all of the Bourque Printing sales representatives, with the exception noted, were paid on a "50%/36%" basis.

In November 2006, after receiving a commission check for a lesser amount than anticipated, Gibbens called McElwain to ask about her commission.  McElwain directed her to contact Champion's President and Chief Operating Officer Toney Adkins, who sent Gibbens her commission

---

[1] Internal costs, such as labor and administrative expenses were included in the total from which the eleven percent commission was calculated.

reports for the first half of 2006. Gibbens attempted to reconcile the commission reports with her own sales reports and e-mailed McElwain to confirm that under the current formula, her commission was fifty percent of the net profit on jobs printed in Baton Rouge and forty percent of the net profit on jobs printed elsewhere. McElwain responded by suggesting that Gibbens contact Adkins with any questions. Gibbens sent McElwain a second e-mail explaining that she was simply seeking clarification of an earlier conversation that she had with McElwain as to whether her commission on jobs printed elsewhere was thirty-six percent or forty percent. McElwain replied that the correct figure was thirty-six percent.

From 2007 through 2010, Gibbens continued to receive commission checks that she believed were insufficient to fully compensate her under the "50%/36%" commission formula. During this time, Gibbens repeatedly called and e-mailed McElwain, Adkins, and Marshall Reynolds, the Chairman of Champion's Board of Directors, in order to resolve the issue, but was unable to receive a satisfactory response. Gibbens subsequently filed suit against Champion in April 2011 for breach of contract based on Champion's failure to pay her commissions in accordance with the 50%/36% formula to which McElwain allegedly confirmed in an e-mail would be applied to her.

Champion moved for summary judgment on the basis that Gibbens could not establish the elements of consent, cause, or capacity necessary for a valid contract modification because (1) there was no offer and acceptance in the November 2006 e-mail exchange, (2) Champion had no reason to modify her commission formula, and (3) McElwain had neither actual nor apparent authority to modify Gibbens's commission formula on behalf of Champion. The district court denied Champion's motion. It concluded first that because the e-mail exchange was just "one piece" of evidence of an earlier modification by McElwain, it need not comprise an offer and acceptance. Second, it held that

No. 13-30344

Gibbens's ongoing employment could provide cause for the modification. Lastly, the district court decided that there was a genuine dispute of material fact concerning McElwain's authority to modify Gibbens's commission formula, notwithstanding McElwain's deposition testimony to the contrary.

Following the completion of discovery, Champion again filed a motion for summary judgment focusing on Gibbens's failure to establish the elements of capacity and cause. The motion was supported by affidavits from McElwain, Adkins, and Reynolds stating that McElwain had no authority to modify Gibbens's commission formula; Adkins and Reynolds never conveyed to Gibbens that McElwain had such authority; prior to the November 2006 e-mail exchange, Gibbens's continued employment with Champion was not at issue; and Champion had no reason to change Gibbens's commission formula. The district court granted Champion's motion for summary judgment based on the fact that the affidavits of McElwain, Adkins, and Reynolds constituted "undisputed evidence that McElwain did not have actual or apparent authority to modify the commission agreement at any time, nor was it ratified by [Champion]." This appeal followed.

## II

We review de novo the district court's grant of summary judgment, applying the same standard as the district court.[2] "Summary judgment is appropriate if 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[2] *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 836-37 (5th Cir. 2009).

4

No. 13-30344

and that the movant is entitled to judgment as a matter of law.'"[3] We draw all reasonable inferences in favor of the non-moving party.[4]

### III

Under Louisiana law, the formation or modification of a valid contract requires four elements: (1) capacity; (2) consent; (3) cause; and (4) lawful object.[5] If any element is missing, the contract is not valid as a matter of law.[6] We consider each element in turn.

### A

Consent to a contract is established by offer and acceptance.[7] "[W]here there is no meeting of the minds . . . the contract is void for lack of consent."[8] Champion presents two arguments that consent was lacking: first, that there was no mutual understanding between McElwain and Gibbens of the facts underlying the modification of Gibbens's commission formula, and second, that even if McElwain himself consented to such a modification, he lacked authority to do so on Champion's behalf and Champion never consented of its own accord through ratification.

Champion's first argument is premised on inconsistencies between the respective understandings of McElwain and Gibbens as reflected in the November 2006 e-mail exchange. However, as the district court noted in denying Champion's initial motion for summary judgment, the November 2006 e-mail exchange is but "one piece that indicates that the commission rate was

---

[3] *Id.* at 837 (quoting FED. R. CIV. P. 56(c)).

[4] *Id.*

[5] *Ingraffia v. NME Hosps., Inc.*, 943 F.2d 561, 565 (5th Cir. 1991); *J. Caldarera & Co. v. La. Stadium & Exposition Dist.*, 99-787, pp. 6-7 (La. App. 5 Cir. 12/15/99); 750 So. 2d 284, 288, *writ denied*, 2000-0122 (La. 3/17/00); 756 So. 2d 1144.

[6] LA. CIV. CODE ANN. art. 2029 (2008).

[7] *Id.* art. 1927.

[8] *Philips v. Berner*, 2000-0103, p. 5 (La. App. 4 Cir. 5/16/01); 789 So. 2d 41, 45.

modified by McElwain when Gibbens was transferred under his supervision." Accordingly, any lack of mutual understanding in the e-mail exchange does not negate the possibility of consent in the earlier interaction between McElwain and Gibbens when Gibbens was first placed under McElwain's supervision. Gibbens stated in her declaration and in her deposition that McElwain told her then that she was going to be on the Bourque commission schedule, which she asserts McElwain told her would be fifty percent on jobs printed in-house and either forty percent or thirty-six percent on jobs printed by outside vendors. McElwain stated at his deposition and in his affidavit that he had no intention of changing Gibbens's commission formula. However, a court may not make credibility determinations in ruling on a motion for summary judgment.[9] Drawing all reasonable inferences in favor of Gibbens, we conclude that Champion cannot establish as a matter of law that McElwain did not consent to change Gibbens to the 50%/36% commission formula.

However, it remains to be determined whether consent was lacking because, as Champion contends, McElwain lacked authority to modify Gibbens's commission formula and Champion never ratified such a decision. In Louisiana, an agent's authority to enter into or modify a contract on behalf of a principal consists of his "actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct."[10] The principal will also be bound by the terms of even an unauthorized agreement if it ratifies it by consenting to the obligation after the fact.[11] We have previously held that under Louisiana law, a corporation may ratify the unauthorized act of its agent "through the knowing acquiescence of those

---

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[10] *Boulos v. Morrison*, 503 So. 2d 1, 3 (La. 1987).

[11] *Quilio & Assocs., Inc. v. Plaquemines Parish Gov't*, 2005-0803, p. 10 (La. App. 4 Cir. 5/10/06); 931 So. 2d 1129, 1136; *see also* LA. CIV. CODE ANN. art. 1843.

No. 13-30344

having the authority, so long as the unauthorized act is not violative of the corporate charter, state law, or public policy."[12]

Here, the district court found that Champion did not ratify McElwain's decision to modify Gibbens's commission formula because Gibbens was never paid commissions at the modified rate and "corporate's inaction only suggest[ed] that they were ignoring her repeated demands, not that they were 'ratifying' McElwain's unauthorized statement." However, the fact that Champion never paid Gibbens according to the modified formula shows only that Champion failed to perform under the allegedly modified agreement, not that Champion never ratified it in the first place. Additionally, while Champion's inaction does not necessarily constitute ratification, the acts that it did take create a genuine dispute of fact as to whether Champion ratified Gibbens's modified commission formula.

When Gibbens discovered that her commission checks for the first three quarters of 2006 were less than expected and she contacted Adkins to inquire about them, Adkins responded by sending her commission reports for January 2006 through June 2006, which appear to correspond to the 50%/36% formula to which Gibbens asserts her commissions were changed. The relevant information from the reports is depicted in the following table.

| Sales Period | Jan. 2006 | Feb. 2006 | Mar. 2006 | Apr. 2006 | May 2006 |
|---|---|---|---|---|---|
| **Margin on Sheet Sales** | ($16,053) | ($23,747) | $6,819 | $6,819 | $58,747 |
| **Margin on Rotary Sales** | ($4,708) | $247 | ($9,667) | ($9,216) | $1,197 |
| **Margin on Sublet Sales** | $51,158 | $5,968 | ($414,376) | $743,047 | ($40,098) |
| **Credit Memos and Interest** | ($1,084) | ($379) | ($929) | ($760) | ($2,121) |

[12] *3 A's Towing Co. v. P & A Well Serv., Inc.*, 642 F.2d 756, 758 (5th Cir. 1981).

No. 13-30344

| Salesperson's Portion Earned | $7,494 | ($9,792) | ($151,064) | $265,918 | $14,477 |
|---|---|---|---|---|---|

Under Gibbens's modified commission formula, she asserts that her commission amounts to fifty percent of the margin earned on all jobs printed in-house (sheet and rotary sales) less adjustments (credit memos and interest), plus thirty-six percent of the margin earned on jobs printed by outside vendors (sublet sales). Using January 2006 as an example, if we take fifty percent of the margin earned on sheet sales (-$16,053 × 50% = -$8,026.50) and rotary sales (-$4,708 × 50% = -$2,354) less adjustments for credit memos and interest (-$1,084 × 50% = -$542), and add thirty-six percent of the margin earned on sublet sales ($51,158 × 36% = $18,416.88), we obtain a sum of $7,494.38, which rounds to the amount listed as the Salesperson's Portion Earned. Applying the same calculations to the amounts listed for February 2006 through May 2006 similarly leads to the Salesperson's Portion Earned for each month. Dean Cutrer, a former salesman in Champion's Baton Rouge office who received commissions on the same 50%/36% basis, confirmed that the commission reports sent by Adkins to Gibbens were identical to the commission reports that Cutrer received, with the Total Margin representing the profit on which commission would be paid. The fact that Adkins, Champion's President and Chief Operating Officer, sent Gibbens commission reports corresponding to the 50%/36% formula suggests that Champion knew of and acquiesced in the modification of Gibbens's commission rate.

While this evidence does not unequivocally show that Champion ratified McElwain's modification of Gibbens's commission formula, we cannot say on this record, drawing all reasonable inferences in favor of Gibbens, that there is no genuine dispute of fact regarding Champion's knowledge of and acquiescence in the modification to Gibbens's commission formula. Therefore,

8

Champion is not entitled to summary judgment on the ground that consent is lacking.

## B

Champion may nevertheless prevail if, as a matter of law, either of the two remaining elements of a valid contract—cause and lawful object—are lacking. Champion does not dispute that the modification of Gibbens's commission formula is a lawful object. The only element left to consider is cause.

Louisiana law defines cause as "the reason why a party obligates himself."[13] Unlike common law consideration, "which requires something in exchange, the civil law concept of 'cause' can obligate a person by his will only."[14] "[C]ause is a more subjective element that goes to the intentions of the parties. Therefore, in Louisiana law, a person can be obligated by both a gratuitous or onerous contract."[15] Champion asserts that "[t]here is no logical explanation for why in 2006 Champion suddenly would have obligated itself to nearly double Gibbens commission income when the relationship had successfully proceeded under the same commission structure since 1993." We disagree.

Champion places substantial emphasis on the deposition and affidavit of McElwain and affidavits of Adkins and Reynolds stating that Champion had no reason to modify Gibbens's commission formula and that Gibbens had not threatened to leave her employment with Champion prior to the alleged switch to the 50%/36% formula. While the fact that Gibbens had not threatened to leave her employment with Champion addresses the concern the district court

---

[13] LA. CIV. CODE ANN. art. 1967.

[14] *Aaron & Turner, L.L.C. v. Perret*, 2007-1701, p. 7 (La. App. 1 Cir. 5/4/09); 22 So. 3d 910, 915, *writ denied*, 2009-1148 (La. 10/16/09); 19 So. 3d 476.

[15] *Id.* at p. 8; 22 So. 3d at 915.

expressed in denying Champion's initial motion for summary judgment, it refutes only one possible cause for modifying Gibbens's commission formula. It does not establish as a matter of law that no cause existed for modifying the commission formula. Similarly, the conclusory statements contained in the affidavits of McElwain, Adkins, and Reynolds, and McElwain's deposition testimony that Champion had no reason to modify Gibbens's commission formula "offer[] no enlightenment on matters that, in our view, are essential to a proper disposition of the motion for summary judgment."[16]

Gibbens argues, and it is wholly plausible  that although Gibbens had not yet threatened to leave her employment, Champion had cause to modify Gibbens's commission formula to preempt her from doing so by avoiding the perceived unfairness of compensating her at a lower rate than all of her colleagues, except new sales employees on probation. Alternatively or in addition, Champion may have recognized that Gibbens contributed substantially to sales. She sold more than $13 million of product between 2006 and the second quarter of 2010.   Champion may have sought to switch her to the 50%/36% formula in order to avoid her leaving.

In short, we conclude that there are genuine disputes of material fact that precluded summary judgment based on the present record.

*     *     *

REVERSED and REMANDED.

---

[16] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1222 (5th Cir. 1985) (internal quotation marks omitted).