# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARK FANSLER and LINDA GOLDSTEIN,

    Plaintiffs,

v.

NORTH AMERICAN TITLE INSURANCE COMPANY, R. MATTHEW LONGO, LONGO & ASSOCIATES, LLP., RICHARD M. LONGO, HILLCREST ASSOCIATES, INC. and GLOBAL TITLE, INC.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.: N17C-09-015 EMD

## MEMORANDUM OPINION GRANTING, IN PART, AND DENYING, IN PART, NORTH AMERICAN TITLE COMPANY'S MOTION IN LIMINE REGARDING DAMAGES SOUGHT BY PLAINTIFF

Upon consideration of Defendant North American Title Insurance Company's Motion in Limine Regarding Damages Sought by Plaintiff (the "Motion") filed by Defendant North American Title Insurance Company ("North American"); Plaintiffs' Opposition to North American Title Insurance Company's Motion in Limine (the "Opposition") filed by Plaintiffs Mark Fansler and Linda Goldstein (collectively, "Plaintiffs"); the Second Amended Complaint (the "Complaint"); the Policy (as defined below); the legal arguments and authorities relied upon by North American and Plaintiffs; and the entire record of this civil action, the Court will, for the reasons set forth below, **GRANT, in part,** and **DENY, in part,** the Motion.

## FACTS[1]

The Second Amended Complaint states a single cause of action against North American. According to Plaintiffs, North American breached its obligations owed to Plaintiffs under North American Insurance Company Policy DE221-14-03064-01 (the "Policy").[2] The Policy is a title insurance policy issued with respect to a property located at 1805 Walnut Street, Wilmington, DE 19809 (the "Covered Premises"). According to the Complaint, Plaintiffs purchased the Covered Premises on July 25, 2014.[3] Plaintiffs allege that North American wrongfully denied coverage for a Covered Risk related to a lack of access to the Covered Premises.[4]

The Policy is dated as of July 25, 2014.[5] North American issued the Policy through its agent Global Title, Inc. ("Global").[6] Global is a co-defendant in this civil action. The Policy provides that Plaintiffs are the named insured and that they own the Covered Premises in fee simple.[7]

The Policy provides insurance coverage for up to $117,000 for "Covered Risks."[8] A listing of the Covered Risks is contained on the first page of the Policy.[9] The Policy contains a number of provisions relating to the "amount" of coverage. "Cover Risks" provides:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAIED IN SCHEDULE B, AND THE CONDITIONS, NORTH AMERICAN TITLE INSURANCE COMPANY, a California corporation (the "Company"), insures, as of Date of Policy and, to the extent stated in Covered

---

[1] The Court has, on numerous occasions, set out the facts of this civil proceeding. *See Fansler v. North Am. Title Ins. Co.*, 2020 WL 5805653 (Sept. 29, 2020); *Fansler v. North Am. Title Ins. Co.*, 2020 WL 5793750 (Sept. 29, 2020); *Fansler v. North Am. Title Ins. Co.*, 2020 WL 2520097 (May 18, 2020); *Fansler v. North Am. Title Ins. Co.*, 2020 WL 2393343 (May 12, 2020); *Fansler v. North Am. Title Ins. Co.*, 2019 WL 2524261 (June 19, 2019, 2020); *Fansler v. North Am. Title Ins. Co.*, 2019 WL 1281432 (Mar. 19, 2019); *Fansler v. North Am. Title Ins. Co.*, 2018 WL 3868168 (Aug. 14, 2018). Accordingly, the facts will only be those relevant to the Motion.
[2] 2d Am. Compl. at ¶¶ 26-35.
[3] *Id*. at ¶ 18.
[4] *Id*. at ¶¶ 26-29.
[5] Mot. at Ex. A.
[6] Opp. at Ex. P3.
[7] Mot. at Ex. A.
[8] *Id*. at Ex. A (Policy Page 1 ¶¶ 1-10).
[9] *Id*.

Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured…The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.[10]

Proof of Loss provides:

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of loss or damage.[11]

Determination and Extent of Liability states:

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of (i) the Amount of the Insurance; or (ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expense incurred in accordance with Section 5 and 7 of these Conditions.[12]

Finally, the Liability Limited to this Policy; Policy Entire Contract provision, in part, provides that "[a]ny claim of loss or damage that arises out of the status of the status of the Title or by any action asserting such claim shall be restricted to this policy."[13]

The Policy provides that Plaintiffs are to provide North American with notice in the event of any litigation, claim of title adverse to Plaintiffs' rights to the Covered Premises or title to the Covered Premises becomes "Unmarketable."[14]

---

[10] *Id.* at Ex. A (Policy Page 1).
[11] *Id.* at Ex. A (Policy Page 2, at ¶ 4).
[12] *Id.* at Ex. A (Policy Page 3, at ¶ 8).
[13] *Id.* at Ex. A (Policy Page 4, at ¶ 15).
[14] *Id.* at Ex. A (Policy Page 2 "Notice of Claim to be Given by Insured Claimant").

3

The Court notes that all Covered Risks relate to matters relating to Covered Premises, its legal description and alienability. The Policy does not mention consequential damages and does not specifically mention future profits, lost sales opportunities, wages or alike.

On or about July 24, 2015, Plaintiffs notified North American that the Covered Premises was landlocked due to survey mistakes.[15] On September 21, 2015, Plaintiffs filed suit in the Delaware Chancery Court (the "Chancery Court Action") to obtain an easement for the Covered Property.[16]

On December 1, 2015, North American denied coverage under the Policy.[17] In denying coverage, North American contended that coverage did not exist because right of access to the Covered Premises was not being challenged.[18] Plaintiffs responded to North American on May 16, 2017, contending that North American improperly denied coverage and providing notice of the Chancery Court Action.[19] On August 16, 2017, North American responded to Plaintiffs and continued to maintain that Plaintiffs' claim was not a Covered Claim under the Policy.[20]

Plaintiffs obtained an easement to the Covered Premises in the Chancery Court Action.[21]

## PARTIES' CONTENTIONS

### NORTH AMERICAN'S CONTENTIONS

In the Motion, North American asks the Court to preclude Plaintiffs from trial testimony or evidence concerning the "Unrelated Damages." North American defines the Unrelated Damages as follows: (i) Lost Wages totaling $70,000; (ii) Costs to obtain Sewer Access totaling $45,783; (iii) Carrying costs for the Covered Premises totaling $96,499.21; (iv) Lost Opportunity

---

[15] *Id*. at ¶ 3.
[16] *Id*. at ¶ 4.
[17] *Id*. at ¶ 5.
[18] *Id*.
[19] *Id*. at ¶ 6.
[20] *Id*. at ¶ 7.
[21] 2d Am. Compl. at ¶ 30.

4

Costs totaling $22,962.52; and (v) Lost Earnings totaling $62,251.66.[22]  North American also seeks to have Plaintiffs damages limited to the cost and fees incurred in the Chancery Court Action.  North American argues that this relief is warranted under Delaware law and the Policy's terms and conditions.

### *PLAINTIFFS' CONTENTIONS*

Plaintiffs oppose the Motion.  Plaintiffs argue that the Policy does not exclude indirect or consequential damages.  Plaintiffs contend they can recover up to $117,000 plus the costs, attorneys' fees and expenses related to the Chancery Court Action.[23]

## DISCUSSION

Insurance policies are contracts.[24]  The interpretation of contractual language, including in insurance policies, "is a question of law."[25]  The principles governing the interpretation of an insurance contract are well-settled.  In attempting to resolve a dispute over the proper interpretation of an insurance policy, "a court should first seek to determine the parties' intent from the language of the insurance contract itself."[26]  In reviewing the terms of an insurance policy, the Court considers "the reasonable expectations of the insured at the time of entering into the contract to see if the policy terms are ambiguous or conflicting, contain a hidden trap or

---

[22] Mot. at ¶¶ 8-12.

[23] Opp. at ¶ 11.

[24] *Northrop Grumman Innovation Systems, Inc. v. Zurich Am. Ins. Co.*, 2021 WL 347015, at *9 (Del. Super. Feb. 2, 2021) (citation omitted).

[25] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001) *see Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1232 (Del. 2018) ("Whether [a] contract's material terms are sufficiently definite [is] mostly, if not entirely, a question of law." (citation omitted)); *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1232 (Del. 2017) (same).

[26] *Alstrin v. St. Paul Mercury Ins. Co.,* 179 F. Supp. 2d 376, 388 (D. Del. 2002); *see also Emmons v. Hartford Underwriters Ins. Co.,* 697 A.2d 742, 745 (Del. 1997)("The scope of an insurance policy's coverage . . . is prescribed by the language of the policy.") (citing *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.,* 616 A.2d 1192, 1195–96 (Del. 1992)); *Playtex FP, Inc. v. Columbia Cas. Co.,* 622 A.2d 1074, 1076–77 (Del. Super. 1992) (citing *E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.,* 498 A.2d 1108, 1113 (Del. 1985)); *Kaiser Aluminum Corp. v. Matheson,* 681 A.2d 392, 395 (Del. 1996).

pitfall, or if the fine print takes away that which has been provided by the large print."[27] Ambiguity exists when the disputed term "is fairly or reasonably susceptible to more than one meaning."[28] Absent any ambiguity, contract terms should be accorded their plain, ordinary meaning.[29] If an insurance policy contains an ambiguous term, then the policy is to be construed in favor of the insured to further the contract's purpose and against the insurer, as the insurer drafts the policy and controls coverage.[30]

The parties presented general legal principles regarding consequential damages and alike; however, neither party provided any case from Delaware (or any other jurisdiction) regarding the interpretation of a title insurance policy and the terms "actual loss or damage." Courts have addressed this issue, and in jurisdictions that use the same rule of contract interpretation used in Delaware.[31] The plain language of the Policy allows recovery of "actual loss or damage" and not consequential damages. Courts have held that this exact language, coupled the language with the language relating to the "difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy," does not favor an inference that the parties contemplated consequential damages. The Court agrees with this conclusion and holds

---

[27] *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.,* 1996 WL 111205, at *2 (Del. Super. Jan. 30, 1996)(citation omitted); *see Steigler v. Ins. Co. of N. Am.,* 384 A.2d 398, 401 (Del. 1978)("[A]n insurance contract should be read to accord with the reasonable expectations of the purchaser so far as the language will permit.")(quoting *State Farm Mut. Auto. Ins. Co. v. Johnson,* 320 A.2d 345, 345 (Del. 1974)(internal quotation marks omitted)).
[28] *Alta Berkeley VIC. V. v. Omneon, Inc.,* 41 A.3d 381, 385 (Del. 2012).
[29] *See id.*; *see also Goggin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2018 WL 6266195, at *4 (Del. Super. Nov. 30, 2018); *IDT Corp. v. U.S. Specialty Ins. Co.,* 2019 WL 413692, at *7 (Del. Super. Jan. 31, 2019).
[30] *See Alstrin*, 179 F. Supp. 2d at 390 ("Generally speaking, however, Delaware . . . courts continue to strictly construe ambiguities within insurance contracts against the insurer and in favor of the insured in situations where the insurer drafted the language that is being interpreted regardless of whether the insured is a large sophisticated company.")(citations omitted); *Nat'l Union Fire Ins. Co. v. Rhone–Poulenc Basic Chems. Co*., 1992 WL 22690, at *8 (Del. Super. Jan. 16, 1992)("Application of the [*contra proferentem*] doctrine turns not on the size or sophistication of the insured, but rather on the fact that the policy language at issue is drafted by the insurer and is not negotiated.")(citation omitted)).
[31] *See, e.g., First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 839 (5th Cir. 2009)("A plain reading of 'actual loss or damage' [language from the policy] does not include 'consequential loss' or consequential damage.'"); *Gomez v. Fidelity Nat'l Title Ins. Co. of N.Y.*, 950 N.Y.S.2d 608 (Table) 2012 WL 671935, at *4-5 (N.Y. App. Div.)(holding that "actual loss or damage" language in policy does not include consequential damages).

that the Policy does not indemnify for consequential damages like lost opportunity or wages. The purpose of the Policy is to protect market value up to $117,000 in the event encumbrances, liens or defects cannot be cured.[32]  Alternatively, the Policy indemnifies for the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.[33]  This is a title insurance policy and not a general comprehensive liability policy or an economic loss policy.

Accordingly, at trial, Plaintiffs will not be able to present damages evidence on lost wages, carrying costs, lost opportunity costs and/or lost earnings.  As for "costs to obtain sewer access," the Court finds the record to be incomplete.  The Court will allow the jury to consider these costs if the evidence presented shows it to be a "Covered Risk."[34]  If not, the Court will strike the evidence and instruct the jury not to entertain it during deliberations.  The Court will not grant the requested relief that Plaintiffs damages limited to the cost and fees incurred in the Chancery Court Action.  The Policy holds that indemnification is up to $117,000 plus costs and attorneys' fees. [35]

## CONCLUSION

For the reasons set forth above, the Motion is **GRANTED**, in part, and **DENIED**, in part.

**IT IS SO ORDERED.**

Dated: October 12, 2021
Wilmington, Delaware

/s/ *Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress

---

[32] Mot. at Ex. A (Policy Page 3, at ¶ 8).
[33] *Id.*
[34] *See, e.g.*, *id.* at Ex. A (Policy Page1, at ¶ 4).
[35] *Id.* at Ex A. (Policy Page 3, at ¶ 8).